## NATIONAL LABOR RELATIONS BOARD v. AMERICAN MFG. CO., Inc.

### No. 8964.

Circuit Court of Appeals, Fifth Circuit.

Jan. 13, 1943.

Rehearing Denied Feb. 12, 1943.

Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, and A. Norman Somers, all of Washington D. C., and L. N. D. Wells, Jr., of St. Louis, Mo., Attys., National Labor Relations Board, for petitioner.

Richard U. Simon, of Fort Worth, Tex., for respondents.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The petition alleges that in disobedience of an order and decree of this court of date December 9, 1938, entered by consent, ordering respondents to cease and desist from unfair labor practices,[1] re-

---

[4] Sanders v. Pottlitzer Bros. Fruit Co., 144 N.Y. 209, 39 N.E. 75, 76, 29 L.R.A. 431, 43 Am.St.Rep. 757; 12 Am.Jur., p. 523, § 25.

[1] "(b) From discouraging membership in International Association of Machinists, Local Union No. 791, or in any other labor organization of its employees, by discharging its employees or otherwise discriminating in regard to hire or tenure of employment or any term or condition of employment;

"(c) From in any other manner interfering with, restraining, or coercing

spondents have, for the purpose and with the effect of interfering with, restraining and coercing employees in the exercise of their rights to self-organization, disobeyed, resisted and disregarded Sec. 1 (c) of the decree in several particulars. These are: (1) that on or about June 1, 1942, a few hours after agents of the I. A. of M. had circulated outside the company's gates notices announcing a union membership campaign, the respondents caused to be attached to the timecard of each employee the notice set out in the margin;[2] (2) that thereafter while carefully refraining from correcting the interference, restraint and coercion resulting from the distribution of the aforesaid notice, respondents put up or posted another notice[3] on the bulletin board, which, while pretending to avoid the consequences of the first notice was a re-emphasis of its coercive influence; (3) that on about June 15, 1942, it posted a no-tice on the board to the effect; that union officials were attempting to mislead the employees in regard to a refund paid under the terms of this court's decree; that as a matter of fact more would have been received if the employee had continued working for the respondents instead of listening to the Union officials, and the notice further stated that it was unnecessary to belong to a union to work for respondents and unnecessary to pay $50.00 for the privilege of working "until another $50.00 sucker comes along", and there were derogatory references to union organizers as racketeers. There were other charges, but since they are denied by respondents and the matter was submitted on bill and answer, it is unnecessary to set them out. There was a prayer for, a show cause order, a judgment holding respondents in contempt, and for the imposition of conditions, including a fine, for purging them of contempt. The

---

its employees in the exercise of the right of self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining and other mutual aid and protection, as guaranteed in Section 7 of the National Labor Relations Act [29 U.S.C.A. § 157]."

2 "To our men"

"We are proud of the huge job we are attempting to do for our Country.

"You men are doing a real job in this effort—you are spending long hours on the job away from your families and favorite relaxations to help us get the job done—your pay is the highest in this section of the country AND YOU ARE NOT FORCED TO PAY A HIGH FEE FOR THE PRIVILEGE OF BEING DICTATED TO BY A BUNCH OF RACKETEERS, WHO SEEM TO HAVE NO INTEREST IN ANYTHING BUT LOAFING AROUND DOING NOTHING AND SUCKING MONEY OUT OF HONEST WORKING MEN.

"We believe you are interested in seeing and helping your Country win the war—in doing your part for your Government in this critical time. We believe you are happy working to this end and THAT YOU ARE TOO BUSY DOING SOMETHING WORTH WHILE TO HAVE ANY TIME TO FOOL AROUND WITH ANYONE WHO ATTEMPTS TO GET YOU OFF OF THIS TRACK.

"EVERY MINUTE COUNTS.
                    "The Management."

3 "To Our Employees:
"I am advised that a letter was sent earlier today stressing the big job we have—the big part you are playing in it—and you were asked to be careful to allow nothing to get you 'off the truck'.

"Word has just reached us that some of our men misunderstood or 'jumped to the conclusion' that the remarks were aimed at Unions, employees' organizations, etc.

"Any man in our employ has the right to join with or organize with others for his and their welfare. We are not legally allowed and do not interfere with the rights of our men under the Wagner Act or any other—just as, being a so-called 'open shop' we do not require a man to join any Union, company or other-wise.

"I don't see how any men could have got a wrong slant on the letter. The language was strong for it often does get that way when people start thinking or talking of the many strong forces that are at work to 'bog down' our efforts to help our Government win this war. Our work is confidential. We are all constantly reminded to stay on the job and keep our mouths closed.

"If you don't 'stay on the track'—work hard as you can now—before it is too late—you will have a dictator and a merciless one—he will exact fees beyond your human ability to pay—call him a Dictator, Duce, or just plain Racketeer, it is all the same, a racket—The World's biggest racket in all history.

"IT IS LATE, BUT NOT TOO LATE—EVERY MINUTE COUNTS.
                "AMERICAN MANUFACTURING
                    COMPANY OF TEXAS,
"(Signed)            W. J. GOURLEY."

respondents answering the petition, denied that they had intended to act, or had acted, in contempt of this court's decree. Admitting the posting of the three notices as charged in the petition, but denying that they had been posted with the intention or with the effect of violating this court's decree, they denied the other charges of the petition. As to the admitted matters, they defended on the grounds (1) that the acts complained of had no connection with, and no relation or similarity to, the acts and practices which brought about the former decree and which that decree sought to remedy, and (2) that if they had, they did not interfere with, restrain or coerce respondent company's employees in the exercise of their right of self-organization, and were, therefore, not contemptuous. We cannot agree with either of these positions. The first, that the scope of the decree, consented to by them, and long since become final, may now be limited short of its terms, is wholly without merit, for a decree entered with jurisdiction must be obeyed as entered. It may not be defied or disobeyed. Its terms are clear and comprehensive and if they read more broadly than respondent intended that they should, the time and manner of avoiding that breadth was by objections to the decree before its entry and not by disobedience of it afterwards. Their second point that the acts complained of were not in violation of the decree is equally without merit. Indeed, the attempt to explain away the apparent purpose and natural effect of the language used in the notices, which though designedly equivocal is yet plain enough, is the veriest kind of quibbling. Whether the notices actually had the effect intended by them of restraining any employees in the exercise of the particular right to self-organization, in question when the notices were issued, to-wit, their right to join the I. A. of M., which was then attempting to organize the plant, we cannot and need not say, for to constitute contempt of our order it is not necessary for them to have had that effect. It is sufficient if they were issued for the purpose of interfering with, restraining or coercing the employees in respect to joining the Union then conducting an organizational campaign, and that they were so issued we think no reasonable person could doubt. It is quite clear then that the respondents are in contempt of the decree of this court and that they must be so adjudged. A decree, requiring the respondents to take appropriate action to purge themselves of the contempt by disavowing prior conduct and statements of respondent company found to have been contemptuous and assuring against further violations of the decree, may be prepared and presented.