NATIONAL LABOR RELATIONS BOARD v. RETAIL CLERKS INTERNATIONAL ASS'N, A.F.L., RETAIL CLERKS UNION LOCAL 648, et al.

No. 12434.

United States Court of Appeals
Ninth Circuit.
March 31, 1953.

·G. Johnson, Attorneys, N. L. R. B., Washington, D. C., for petitioner.

Roland C. Davis, J. D. Burdick and Carroll & Davis, San Francisco, Cal., for respondent Retail Clerks Int. Ass'n.

Elisha Hanson, Washington, D. C., Willard S. Johnston, and Orrick, Dahlquist, Neff & Herrington, San Francisco, Cal., for Safeway Stores, Inc., amicus curiæ.

Before BONE, ORR and POPE, Circuit Judges.

BONE, Circuit Judge.

On January 14, 1950, this court entered a consent decree enforcing an order of the National Labor Relations Board directing, among other things, that Retail Clerks International Association, AFL (hereinafter called "International") and Retail Clerks Union, Local 648 (hereinafter called "Local") shall not "(b) Refuse to bargain collectively with Safeway [Stores, Incorporated] for the employees in the unit described in paragraph IV of the stipulation in case No. 20–CB–43 by insisting or demanding that Safeway bargain collectively for supervisory employees of Safeway within the meaning of Section 2(11) of the Act." The "employees in the unit described in paragraph IV" were "all employees in the grocery departments of the 71 Safeway stores in San Francisco County, excluding location managers and other supervisory employees * * *." In the same proceeding this court entered consent decrees enforcing similar Board orders against several other Local Retail Clerks Unions affiliated with International.

Subsequently the Board filed a petition in this court to have International, Local, and certain named officials of those organizations adjudged in civil contempt for refusing to bargain collectively with Safeway except on the condition that Safeway would agree to bargain for "location managers" employed by Safeway.

The primary question in the contempt proceeding was whether location managers were supervisory employees within the meaning of the enforcement decree. While the stipulation above referred to reflected an agreement that, for the purpose

George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, National Labor Relations Board, Washington, D. C., Frederick U. Reel and Robert

of determining the appropriate bargaining unit location managers should be considered supervisory employees, such agreement was not carried into and made a part of the decree. The decree, therefore, while it prohibited demands that Safeway bargain for supervisory employees as **a** condition of respondents' bargaining for clerks, did not specifically proscribe demands that Safeway bargain *separately for location managers.* Thus the question arose whether, at the time of the alleged violations of this Court's decree, location managers were "supervisory employees" within the meaning of the decree.

Since the order of the Board and the enforcement decree of this court had been entered by consent, there was nothing in the record and no findings of the Board to indicate whether location managers were supervisory employees within the meaning of the decree. This court was unwilling to resolve that question upon the basis of the affidavits submitted in the contempt proceeding. Accordingly, we returned the case to the Board to take testimony and make appropriate findings on this single question, prior to any further proceedings for enforcement. See our opinion 186 F.2d 371.

The Board took the position that we had returned the case for further hearings with a view to clarification and modification of our decree. After a hearing with all parties represented the Trial Examiner issued an intermediate report in which he made a finding of fact that location managers were "supervisory employees" of Safeway within the meaning of § 2(11) of the National Labor Relations Act, 29 U.S.C.A. § 152, as amended. No exceptions were taken to this finding of fact in the intermediate report. The Board adopted the findings of the Trial Examiner and issued an amended order specifically including "lo-

cation managers" within the term "supervisory employees."[1]

At the said hearing the other local unions, which were respondents in the proceeding for enforcement of the Board's original order but not involved in the later contempt proceeding, stipulated that the evidence introduced was applicable to location managers employed by Safeway in each of their respective jurisdictions. No objection having been made to the finding that location managers were supervisory employees, the Board entered amended orders similar to that quoted above as to each of the locals involved in the original proceeding.

The Board now petitions this court for summary enforcement of its amended orders and for dismissal of the contempt proceedings. However, the Board contends that if enforcement of its amended orders is denied, then we should proceed to dispose of the contempt matter.

At the outset we must erase certain misunderstandings arising out of our return of the case to the Board for further proceedings. In taking this action we merely gave leave to take testimony and make findings on the primary and controlling fact issue raised on the contempt proceeding. We did not contemplate that the Board would undertake to amend its original orders and petition this court for enforcement thereof.

The present enforcement decree of this court issued on January 14, 1950, is valid and effectual. There is no reason to clarify or supplement it in the manner proposed by the Board. Nothing would be gained thereby.

The Board concedes that in any future proceedings to adjudge respondents in contempt for violation of such a proposed amended decree, the question would still arise whether "location managers" are

---

1. The amended order reads as follows:
"* * * Retail Clerks International Association, A. F. of L., and Retail Clerks Union, Local 648:
"1. Shall not:
"(b) Refuse to bargain collectively with Safeway for the employees in the unit described in paragraph IV of the

Stipulation in Case 20–CB–43 by insisting or demanding, as a condition to such bargaining, that Safeway bargain collectively for location managers or other supervisory employees of Safeway within the meaning of Section 2(11) of the Act." (Emphasis ours.)

"supervisory employees" within the meaning of § 2(11) of the Act. For it goes without saying that Safeway could not place respondents in contempt of such amended decree by the expedient of naming any number of its employees "location managers." And it should be just as obvious that if the duties of location managers are so modified as to make them lose their status as supervisory employees under the Act, respondents would not be in contempt of the proposed amended decree. The decree of this court could not be so expanded as to proscribe demands that Safeway bargain for *non-supervisory* personnel. Such a decree could only be founded upon an entirely new Board proceeding.

Further, to modify our decree as the Board suggests would be to commit the error condemned in McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 500, 93 L.Ed. 596, where the Supreme Court said, at pp. 192–193, with reference to the District Court's treating a contempt proceeding as an action for broadening of the Court's previous decree:

"The instant case is an excellent illustration of how it could operate to prevent accountability for persistent contumacy. Civil contempt is avoided today by showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan. Thereafter the defendants work out a plan that was not specifically enjoined. Immunity is once more obtained because the new plan was not specifically enjoined. And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught."

As we stated in our opinion returning the case to the Board, we might have decided the contempt charge on the basis of affidavits submitted in the contempt proceeding. We might also have referred the cause to a special master. Instead we committed determination of the primary issue of fact, in the first instance, to the Board.

Such reference is not usual in a contempt proceeding. In several cases it has been said to be improper. See N. L. R. B. v. New York Merchandise Co., 2 Cir., 134 F.2d 949; Wallace Corporation v. N. L. R. B., 4 Cir., 159 F.2d 952; N. L. R. B. v. Bird Mach. Co., 1 Cir., 174 F.2d 404. However, there is reason for taking such a course where, as here, the single fact question involved is one with which the Board is eminently equipped and qualified to deal. The fact question, briefly, was whether (at the time of the alleged violation of our enforcement decree) the location managers therein involved were "supervisors," despite having certain duties of food clerks. To resolve this one fact question we determined to utilize the machinery of the Board to procure a record and finding thereon.

In the New York Merchandise, Bird Mach. Co., and Wallace Corp. cases, supra, the courts took the position that general decrees enforcing reinstatement and back pay orders of the Board were only interlocutory, and that further proceedings by the Board looking toward particularization of the decrees were necessary prior to contempt proceedings. The difference between such a proceeding and the contempt proceeding here, the primary purpose of which is not punishment but ascertainment of the effect of this court's decree upon a certain state of facts, is principally one of *form* and not of substance. The courts in the above-cited cases committed the question of modification of their decrees to the Board because the questions involved were such as to fall within the Board's province. The same consideration is present here. However, greater particularization of our decree would have been neither effectual nor proper in this case for the reasons pointed out above.

While we are in accord with the proposition that the Board should, as a general rule, have no part in a contempt proceeding, there should be some flexibility in the rule.[2] The findings of the Board in

2. The arguments are that the courts should retain complete power over the policing of their own decrees and that ref-

erence of questions to the Board in a contempt proceeding would in effect be entrusting to the Board the enforcement

the supplementary proceeding before it should in any such case be accepted with caution. We do not say that the course we have taken here will or should be followed in all cases of this nature, but we see no compelling reason for vacating our order returning the cause to the Board. Accordingly, we shall proceed to consider the contempt proceeding upon its merits.

■ The only substantial question posed in the contempt proceeding was and is whether location managers are supervisory employees within the meaning of § 2(11) of the Act. The Board, after a hearing, has answered that question in the affirmative, with no exceptions having been taken by respondents to its finding of fact on the issue. We have examined the affidavits and the record made by the Board and are in agreement with its conclusion as to the status of location managers.

There is no question that Local and International did impose as a condition to their bargaining on behalf of clerks the bargaining by Safeway for location managers. Respondents have admitted to demanding freedom on the part of the clerks to strike if location managers are not provided for in the bargaining agreement; that persons doing the work of clerks (which would include location managers for part of their work day) should have the benefit of any collective bargaining agreement that should be entered into, or in the alternative that location managers should not do the work of clerks; and that location managers should be selected from among the clerks. And it is further admitted that respondents called a strike when its demands were not met.

■■ It will not do to say that the demands made were solely in the interests of the clerks in the appropriate bargaining unit. The effect of our decree was to prohibit all attempts of respondents to exact concessions from Safeway as to supervisory employees as the price of reaching an agreement as to the terms and conditions of employment of clerks. We think it too plain for argument that respondents' demands flew directly in the face of this prohibition. And it is immaterial that when respondents consented to the entry of this court's decree they did not foresee that this would be its effect. A party may not voluntarily submit himself to a judgment of a court one day and flout it with impunity the next when its application proves more distasteful than he had anticipated. N. L. R. B. v. American Mfg. Co., 5 Cir., 132 F.2d 740.

■ It is unnecessary to discuss at length the contention of respondents that the Board exceeded its authority in issuing the original order here in question and that so much of this court's decree as enforces it should be disregarded and stricken. The same contention was made when the contempt matter first came before this court and was rejected without discussion. The Board clearly had jurisdiction to investigate the unfair labor practices charged. As to the power of the Board to issue the order, the question is not, as respondents would have us believe, whether supervisory employees may be deprived of their conceded right to organize, join unions and bargain collectively through representatives of their own choosing. Rather, the question is whether International and Local can condition their *duty* to bargain collectively for the bargaining unit which they represent,[3] as to "wages, hours and other terms and conditions of employ-

of its own order. However, the power to punish remains with this court and it is not to be anticipated that this court will surrender its independence in exercising this power to the Board, even though the making of a record on the question involved and the determination thereof in the first instance is delegated to the Board. It is also suggested that this court is bound to follow the findings of the Board where sustained by substantial evidence on the whole record.

But the court could not be so bound in a contempt proceeding.

3. § 8(b) (3) of the National Labor Relations Act reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

 * * * * * *

"(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 9(a)".

ment"[4] upon the employer's bargaining with a class of employees *outside* the unit —a class with which the employer has a right to bargain or not to bargain, as he may choose, and from which Congress designedly, and as a matter of policy, withdrew the protections of the National Labor Relations Act.[5]

The Board could well have concluded that the injection by respondents, directly or indirectly, of the interests of supervisory employees as a consideration in the negotiations for a bargaining agreement was so extraneous to the terms and conditions of employment of those within the proper bargaining unit that the demands constituted a refusal to bargain in good faith.[6] The most that can be said is that the Board erred, and that its order might have been set aside if contested in this court in the first instance. But respondents chose to consent to the entry of the decree of this court. As the Supreme Court said in United States v. Swift & Co., 286 U.S. 106, 116–117, 52 S.Ct. 460, 463, 76 L.Ed. 999:

"We do not turn aside to inquire whether some of these restraints * * * could have been opposed with success if the defendants had offered opposition. Instead, they chose to consent, and the injunction, right or wrong, became the judgment of the court."

And in the same case, 286 U.S. at page 119, 52 S.Ct. at page 464, it was said:

"Wisely or unwisely, they submitted to these restraints upon the exercise of powers that would normally be theirs. They chose to renounce what they might otherwise have claimed, and the decree of a court confirmed the renunciation and placed it beyond recall."

Cf. the first Swift case, Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587; National Labor Relations Board v. American Mfg. Co., 5 Cir., 132 F.2d 740.

We find from the record before us that respondents have violated the enforcement decree of this court of January 14, 1950, in that respondents have failed and refused to bargain collectively with Safeway for the employees in the appropriate bargaining unit, by insisting and demanding as a condition to such bargaining that Safeway bargain collectively for location managers employed by Safeway, which location managers are supervisory employees within the meaning of section 2(11) of the Act. A decree will be entered holding International, Local and the named officials of those organizations in contempt. In this decree we shall allow respondents 60 days in which to purge themselves of their contempt by making a satisfactory showing to this court that the demands proscribed by our decree of January 14, 1950, have been withdrawn and bargaining in good faith resumed.

The petition of the Board for enforcement of the Board's amended orders and the motion of the Board for dismissal of the contempt proceeding are denied. The motions of respondents for dismissal of the contempt proceeding and for modification of this court's decree are denied.

4. § 8(d) of the National Labor Relations Act reads as follows:
 "(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession".

5. See Texas Co. v. N.L.R.B., 9 Cir., 198 F.2d 540, for a discussion of the rights and the status of supervisory employees under the Taft-Hartley Act.

6. Cf. N.L.R.B. v. Dalton Telephone Co., 5 Cir., 187 F.2d 811, certiorari denied 342 U.S. 824, 72 S.Ct. 43, 96 L.Ed. 623, where it was held that an employer could not lawfully condition its signing of a contract embodying a prior accord upon the Union's registering under the law of the state, an act which was extraneous to the bargaining negotiations and which the Union, under the law, was free to do or not to do, as it wished.