**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**RETAIL CLERKS INTERNATIONAL ASSOCIATION, A.F.L., RETAIL CLERKS UNION, LOCAL 648, et al., Respondents.**

No. 12434.

United States Court of Appeals
Ninth Circuit.

Aug. 6, 1956.

Theophil C. Kamholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, Robert G. Johnson, Attys., N.L.R.B., Washington, D. C., Louis S. Penfield, San Francisco, Cal., Albert M. Dreyer, Attys., N.L.R.B., Washington, D. C., for petitioner.

Roland C. Davis, J. D. Burdick, Carroll, Davis & Freidenrich, San Francisco, Cal., S. G. Lippman, Gen. Counsel, Retail Clerk's Internat. Assn., Chicago, Ill., James F. Galliano, Oakland, Cal., for respondents.

Elisha Hanson, Washington, D. C., Willard S. Johnston, George H. Johnston, Orrick, Dahlquist, Herrington & Sutcliffe, San Francisco, Cal., for Safeway Stores, Inc., amici curiae.

Before BONE, ORR and POPE, Circuit Judges.

BONE, Circuit Judge.

The sequence of events occurring in this long drawn-out litigation (up to April 2, 1954) are outlined in our opinion of that date which is reported in 211 F.2d 759. In this opinion, as in our still earlier opinion, 1953, 203 F.2d 165, this Court entered a decree in which respondents, hereafter referred to as "Clerks," were held in civil contempt of the decree entered by this Court on January 14, 1950, which enforced an order of the National Labor Relations Board, hereafter called "Board." Clerks were found in civil contempt for refusing to bargain collectively with Safeway Stores, Inc., hereafter referred to as "Safeway," *except* on condition that Safeway would bargain with Clerks *for* "location managers" (supervisory personnel) employed by Safeway.

Our adjudication of contempt rested on the fact that Clerks were demanding a clause (herein referred to as "clerks' work clause") which sought, in substance, to provide that no location managers were to perform the work of grocery clerks. In our 1953 opinion, we noted, 203 F.2d at page 169, that in the circumstances of the case there was "* * * no question that Local and International did impose as a condition to their bargaining on behalf of clerks the bargaining by Safeway for location managers."

Our 1954 opinion held clerks in civil contempt of this Court's enforcement decree of January 14, 1950. In substance, our order was that Clerks purge themselves of contempt by, among other things, withdrawing the demand that while bargaining with Clerks as to the conditions of Clerks' employment, Safeway must also bargain *for* the conditions of employment of the location managers. The gist of our holding was that while Clerks may bargain for themselves they cannot attach conditions thereto that Safeway shall bargain for supervisory employees. The four demands of Clerks coming under the ban of this decision are referred to and discussed on pages 762, 763 in our opinion reported in 211 F.2d 759. A petition for certiorari was denied, 348 U.S. 839, 75 S.Ct. 47, 99 L.Ed. 662.

On December 10, 1954, Clerks filed a response to our order concerning the aforesaid demands. In this order we had directed them to make a "satisfactory showing to this court that the demands which we have held to constitute a violation of the decree of this court of January 14, 1950, have been withdrawn." 211 F.2d 759, at page 765. This response includes exhibits, one of which is a copy of a communication dated December 7, 1954, addressed to Safeway Stores, Inc., and signed by Clerks and/or their duly authorized representatives. This letter withdrew the

_demands_[1] heretofore pressed upon Safeway by Clerks. Clerks contend that by such act of withdrawal they have purged themselves and are now entitled to an order discharging them from the judgment of civil contempt of this Court's decree of January 14, 1950.

On March 8, 1955, Safeway filed a brief in opposition to Clerks' response of December 10, 1954. It alleges that though the specific demands (footnote 1, supra) were ostensibly withdrawn, the present "clerks' work" demand "is identical in meaning and effect with the former one."

On August 8, 1955, Board filed a memorandum advising this Court of its position with respect to the then status of compliance by Union (Clerks) in connection with the decree entered by this Court, 211 F.2d 759, adjudging them in contempt for failing to obey the enforcement decree of the Court entered January 14, 1950. With the issues thus formulated the case was submitted for decision.

Safeway's position appears to be that the decree of January 14, 1950, (as interpreted by this Court's opinions in finding Clerks in contempt) forbids, in and of itself, the "clerks' work" clause. We do not believe that the opinions interpreting the decree of January 14, 1950 go so far as to hold that a "clerks' work" provision is _invalid per se_. Invalidity of such a clause must depend upon the circumstances of the case.

In our opinion reported in 211 F.2d 759, at page 762, we quoted from our earlier opinion in 203 F.2d 165, at page 169, wherein we said: "The effect of our decree [1950 decree enforcing Board's order] was to prohibit all attempts of respondents [clerks] to exact concessions from Safeway as to supervisory employees as the price of reaching an agreement as to the terms and conditions of employment."

Board views the 1950 decree (as interpreted by our opinions) to forbid a "clerks' work" provision when advanced by Clerks as a device to compel Safeway to recognize and bargain with the Clerks _for supervisors_, or when advanced with a purpose substantially to regulate the working conditions of _supervisors_, and that in the particular circumstances of this case, the "clerks' work" clause had _previously_ been advanced in bad faith, in that sense.[2]

1. These "demands" were summarized by this Court in the opinion, 211 F.2d 759, at page 762. For convenience we quote them from that opinion:

"1. That the agreement, if it did not cover all employees who performed clerks' work, should not contain a no-strike clause, unless such a clause contained suitable guarantees protecting clerks from loss of work or 'against encroachments and abuses of union conditions on the job;'

"2. That the agreement contain a clause requiring Safeway to fill vacancies in location managers' positions from the ranks of the clerks;

"3. That the agreement contain a clause providing that no location manager or any other supervisor employee should perform clerks' work under terms and conditions of employment less favorable to the union than those provided in the clerks' contract; or, in the alternative,

"4. That the agreement contain a clause providing that no location manager or any other supervisory employee should perform clerks' work."

2. The experienced judgment of the Board is entitled to great weight where questions of law are concerned. See Local No. 2880, Lumber & Sawmill Workers Union, United Brotherhood of Carpenters & Joiners of America, A.F.L., v. National Labor Relations Board, 9 Cir., 1947, 158 F.2d 365, certiorari granted, 1947, 331 U.S. 798, 67 S.Ct. 1305, 91 L.Ed. 1824, certiorari dismissed on motion of counsel for petitioner, 1948, 332 U.S. 845, 68 S.Ct. 347, 92 L.Ed. 416; Medo Photo Supply Corp. v. National Labor Relations Board, 1944, 321 U.S. 678, 681-682, fn. 1, 64 S.Ct. 830, 88 L.Ed. 1007.

Board concedes that possibly this Court's decisions, and particularly the decision on rehearing, 211 F.2d 759, may read as Safeway contends. In the decision on rehearing, the writer there dissented, 211 F.2d 759, at page 765, expressing the view that if the majority opinion did so mean, it was erroneous.

However, the records now before us (including the voluminous transcript of negotiations and bargaining proceedings between Clerks and Safeway which followed our opinion of 1954)[3] present the controversy in a posture where it clearly appears that Clerks have specifically withdrawn any and all claims to the right to speak for, or represent, supervisors. (See footnote 4.) As to this specific issue (the chief stumbling block in negotiations for some sort of a contract) it can no longer be said that Clerks are continuing to refuse to "bargain in good faith."

As just above noted, while the question of compliance with the decree of this Court was pending, Safeway and Clerks proceeded to engage in further negotiations which extended over a period of several months and these operations resulted in a collective bargaining agreement in August, 1955 under which agreement the parties appear to be pres-

ently working. This agreement covers the San Francisco "area" here involved and it contains a "clerks' work" clause. Pertinent parts of the provisions in this agreement are set out in the margin.[4]

The contract just above referred to excludes "managers * * * and other persons classified by the employer as supervisors under the law" from the bargaining unit. The contract reserves "all work and services (not defined as supervisory under Section 2(11) [National Labor Relations Act, 29 U.S.C.A. § 152(11)]) connected with or incidental to the handling or selling of all merchandise offered for sale to the public in the Employer's retail establishment" to "employees within the appropriate unit as defined in this agreement," except that the "over-all supervisory location manager" is not affected by section 1, subsection (b) of the agreement, and may perform "clerks' work"[5] in

---

3. The transcript of the negotiations covers several "on the record" meetings and the reports by the participants also cover several "off the record" meetings extending from February 24, 1955, to August 8, 1955, when the parties reached the agreement referred to.

4. "Section 1—Recognition and Contract Coverage.

"(a) The Union is hereby recognized as the sole collective bargaining agency for an appropriate unit consisting of all employees working for the Employer within the jurisdiction of the Union, except * * * *Store managers who are supervisors within the meaning of Section 2(11) of the National Labor Relations Act, as amended, and other persons classified by the Employer as supervisors under the law are specifically excluded hereunder, and none of the terms of this agreement shall be applicable to such supervisors.*

"(b) All work and services (not defined as supervisory under Section 2(11), [National Labor Relations Act, 29 U.S.C.A. § 152(11)]) connected with or incidental to the handling or selling of all merchandise offered for sale to the public in the Employer's retail establishment shall be performed only by employees within the appropriate unit as defined in this agreement; except such work as may be performed in the preparation and sale of

meats, poultry, fish and seafood products, both fresh and frozen; and except such work as is performed under prevailing practices in San Francisco at the point of delivery by a driver-salesman engaged in servicing the retail markets with merchandise directly from a delivery vehicle.

"This provision shall be subject to the following additional conditions.

"(1) Under existing Safeway company policy, the primary function of the over-all supervisory location manager is to manage the Employer's retail establishment and to direct the work of all of the Employer's employees in the establishment. Existing company policy will continue to be observed. The over-all supervisory location manager shall not be affected by the provisions of Subsection (b) above.

"(2) Safeway will keep the Union supplied with an up-to-date list of the names of supervisors excluded hereunder.

"(3) This agreement shall not include or apply to any existing classifications of the company's employees which have been heretofore excluded from contract coverage by the parties." (Emphasis supplied.)

5. To the uninitiated in the retail grocery business, just what is to be regarded as "clerks' work" may be unclear. The general language in the contract, section 1(b), does not greatly aid one.

accordance with "existing company pol-icy."[6] Safeway is to provide the Union "with an up-to-date list of the names of supervisors excluded thereunder."

The transcript of negotiations filed with us shows that throughout these proceedings, while insisting on a satisfactory "clerks' work" provision, Clerks consistently maintained that they were not representing, and would not represent, supervisory employees in the area, and at no time during the negotiations did Clerks suggest that Safeway execute a contract covering supervisors *as an alternative* to the "clerks' work" proposal.

As further evidence that Clerks were not bargaining across the table for supervisors is that though Safeway did not expressly *designate* its so-called "second managers" as supervisory employees (though in fact and under the law they are such) so that they could perform "clerks' work" under the contract (thereby, apparently, subjecting these supervisors to the provisions of the contract), Clerks *informed Safeway*[7] in a communication dated October 7, 1955, that these "second managers," *as supervisors*, were *excluded* from coverage under the contract; that their union membership was being cancelled; and that they could not perform clerks' work by reason of the "clerks' work" clause. Clerks also requested that in the future Safeway itself should not breach the contract and place Clerks in violation of any law

by presenting to it an incomplete list of supervisors.

From this evidence of the negotiations, Board, on August 4, 1955, tendered to us its memorandum opinion that "the evidence is not clear and convincing that respondents made the demand for the 'clerks' work' provisions to compel Safeway to bargain for supervisors, or for the purpose of substantially regulating the terms and conditions of supervisors' employment." Board expressed the view that Clerks did not condition the bargaining for respondent Clerks upon Safeway's bargaining for supervisors; that the Clerks' conduct during recent negotiations with Safeway, or the contract entered into with Safeway, is not "inconsistent with respondents' obligation under the decree and the Court's decisions herein. The Board, therefore, is of the opinion that respondents have purged themselves of contempt."

From a reading of the transcript of the negotiations, the many exhibits tendered by both parties, and the arguments and briefs, we are of the view, as is the Board, that Clerks have now purged themselves of civil contempt of our enforcement decree of January 14, 1950. Clerks seem clearly to have ceased all efforts to bargain with Safeway for supervisors. Relevant, in addition to the facts discussed above to indicate that Clerks have ceased efforts to regulate the terms and conditions of supervisors employment, is the fact that Clerks ultimately agreed upon a "clerks' work"

---

However, a reading of the transcript leaves us with the same impression that counsel for Board seemed to entertain concerning the matter and who expressed to us in oral argument, that though a person could not "put his finger" on what is "clerks' work," still the parties to the contract appear to have a workable understanding of what the term covers.

6. Much the same thing can be said about the indefiniteness of "company policy" as was said in footnote 5 about "clerks' work." A survey was undertaken to determine "company policy" in the various stores of Safeway. How authoritative this will be as a guide to future conduct is

problematical due to an expression of doubt by Safeway's counsel as to the meaning of the results of the survey. But we believe that the parties have a workable concept of "company policy," judging from a reading of the transcript of the negotiations.

7. From the record of negotiations it appears that the parties used such terms as "second manager," "relief location manager" and "assistant manager" to identify Safeway employees who fall into the category of "supervisory" employees. Similar action was also taken by Retail Clerks, Local 373.

provision less restrictive than the one originally proposed. The latter forbade all supervisors from doing *any "clerks' work,"* whereas the clause embodied in the agreement now existing allows the "over-all supervisory location manager" to perform such work to the extent of existing "company policy." Also, at the time Clerks were found in contempt of our decree, Clerks were clearly representing and bargaining *for supervisory employees* in the industry *in* the appropriate bargaining unit. Now Clerks expressly reject any contention that they represent supervisory employees, *and* such employees are no longer members of the Union. And lastly, (at the present time) Clerks and Safeway have reached an operating agreement upon a clause including substantially the same terms agreed upon between the Union and Safeway's competitors[8] in the area.

On September 26, 1955, Safeway filed with this Court a "petition requesting this Court to act to protect its decrees and its pending exercise of jurisdiction thereon by temporary injunctive relief pending its decision herein, together with (1) brief in reply to Board's memorandum of August 4, 1955;[9] (2) report of collective bargaining negotiations; and (3) request that contemnors be denied purgation."[10] Pursuant to this petition and on September 26, 1955, we issued a Rule to Show Cause, which was served on Clerks. Clerks filed their response on October 20, 1955 in which they raised the issue of Safeway's standing to seek such injunctive relief from this Court, asserting that Board has exclusive authority to institute such proceedings against a violation of this Court's decree.

▇ In various proceedings in this case this Court has seen fit to permit Safeway to appear in oral argument and file briefs. When Safeway's petition for injunctive relief came into the picture, Clerks then insisted that Safeway should be restricted to appearing in this controversy in the role of *amicus curiae.* Board filed a memorandum opposing the Safeway petition for injunctive relief, arguing that Safeway has no standing to petition this Court for injunctive relief under the National Labor Relations Act, as amended. This issue thus remained for decision at the time this case was finally submitted. ∘

Safeway contends that it is "well established" that a person benefited by an order of the Board has standing "to invoke the aid of the appropriate federal court in proceedings subsequent to judicial enforcement of the Board order, where the Board has failed to take action required to protect the enforcement decree." It places primary reliance on International Union of Mine, Mill and Smelters Workers, Locals Nos.

8. It appears that the Retail Grocers Association of San Francisco, Ltd., largely representing the industry except for Safeway, filed unfair labor practice charges with the Board against the Union, alleging in effect that Local 648 was seeking unlawfully to bargain for supervisors because of its insistence upon the "clerks' work" clause. The Union was advancing the same proposals supported by the same arguments to the Retail Grocers Association as was advanced to Safeway. After investigation, the Board's Regional Director refused to issue a complaint against Local 648 for violation of the Act.

9. Presumably the memorandum filed with this Court by the Board on August 8, 1955, to which reference was made in earlier parts of this opinion, is meant.

10. In this petition for injunctive relief, and its brief in support thereof, Safeway alleges that the negotiations (discussed above) between Clerks and Safeway resulted in the execution of a collective bargaining contract for the area covered by Local 648; that this agreement contains a "clerks' work" clause to which Safeway alleges it agreed under threat of strike. Safeway further alleges that the International and Local 373, a respondent named in the decree (but not involved in the pending contempt proceedings) have threatened to strike unless Safeway agrees to a similar "clerks' work" clause in a contract for the area covered by Local 373. Safeway requested an order enjoining respondents from demanding a "clerks' work" clause pending this Court's decision in the contempt proceedings.

15, 17, 107, 108, 111 (C.I.O.) v. Eagle-Picher Mining & Smelting Co., 1945, 325 U.S. 335, 65 S.Ct. 1166, 89 L.Ed. 1649.

We are of the view that Eagle-Picher is not authority for the proposition that Safeway has standing to seek the injunctive relief it demands. Eagle-Picher states that unions which had been *permitted* to intervene as parties in the lower court (also) had standing to petition for certiorari to seek review in the Supreme Court of an adverse decision, from which decision the Board did not take an appeal.

Safeway cites Stewart Die Casting Corporation v. National Labor Relations Board, 1942, 7 Cir., 129 F.2d 481, to sustain its argument that it has standing to seek injunctive relief. While that case may provide some support for Safeway's position, a later decision in the same case makes it clear that the Seventh Circuit recognizes that only the Board has standing to prosecute proceedings in aid of its orders. Stewart Die Casting Corporation v. National Labor Relations Board, 1942, 7 Cir., 132 F.2d 801.

We reach the conclusion that Safeway has no standing to petition this Court for injunctive relief against what it alleges is conduct which violates the decrees of this Court. Amalgamated Utility Workers (C.I.O.) v. Consolidated Edison Co of New York, et al., 1940, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738.[11]

Safeway made a motion in open court to intervene in these proceedings for the obvious purpose of becoming an active party seeking injunctive relief. It may be argued that we have authority to grant such a request,[12] but despite the Board's attitude[13] we doubt that anything of value to this Court would be gained thereby since we have a most complete record before us. The motion to intervene as a party is denied.

On the record now before us we conclude that the Clerks have bargained in good faith for non-supervisory employees only, and by so bargaining with no intention that the "clerks' work" provision be *an alternative* to bargaining for supervisors, Clerks have purged themselves of contempt of this Court's 1950 order of enforcement. It is so ordered.

---

11. The Supreme Court, in this case, 309 U.S. at pages 269–270, 60 S.Ct. at page 565, said:

"We think that the provision of the National Labor Relations Act conferring exclusive power upon the Board to prevent any unfair labor practice, as defined, * * * necessarily embraces exclusive authority to institute proceedings for the violation of the court's decree directing enforcement. The decree in no way alters, but confirms, the position of the Board as the enforcing authority. It is the Board's order on behalf of the public that the court enforces. It is the Board's right to make that order that the court sustains. The Board seeks enforcement as a public agent, not to give effect to a 'private administrative remedy'. Both the order and the decree are aimed at the prevention of the unfair labor practice. If the decree of enforcement is disobeyed, the unfair labor practice is still not prevented. The Board still remains as the sole authority to secure that prevention. The appropriate procedure to that end is to ask the court to punish the violation of its decree as a contempt. As the court has no jurisdiction to enforce the order at the suit of any private person or group of persons, we think it is clear that the court cannot entertain a petition for violation of its decree of enforcement save as the Board presents it. * * * *"

The Supreme Court inferentially reaffirmed the Consolidated Edison case in the Eagle-Picher case when it said in the latter case, 325 U.S. at pages 338–339, 65 S.Ct. at page 1168 "We think that, *in the circumstances disclosed*, the petitioners, *though they could not have instituted enforcement proceedings*, had standing to seek review of the order denying the Board's petition." The Consolidated Edison case was cited in the footnote, with additional cases. (Emphasis supplied.)

12. Cf. Haleston Drug Stores, Inc. v. National Labor Relations Board et al., 1950, 9 Cir., 190 F.2d 1022, "No authority is cited in support of the motion and we have found none in the Act or elsewhere which permits intervention in this court."

13. The Board did not oppose Safeway's motion to intervene.