The **FAFNIR BEARING COMPANY**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

Docket 29243.

United States Court of Appeals Second Circuit.

Motion Argued Nov. 30, 1964.

Decided Dec. 24, 1964.

Benjamin Rubenstein, New York City, for movant.

Lucian E. Baldwin, Robinson, Robinson & Cole, Hartford, Conn., for Fafnir Bearing Co.

Carl G. Coben, Atty., N.L.R.B., New York City, Arnold Ordman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., for respondent.

Before FRIENDLY and SMITH, Circuit Judges, and BLUMENFELD, District Judge.*

FRIENDLY, Circuit Judge.

This is a proceeding by The Fafnir Bearing Company to review an order of the National Labor Relations Board, 146 N.L.R.B. No. 179 (1964), finding that Fafnir had violated § 8(a) (1) and (5) of the National Labor Relations Act by refusing to permit the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 133, to perform independent time studies on jobs involved in grievances under the parties' collective bargaining agreement; the Board has cross-petitioned for enforcement. The union, which had filed the pertinent charge, seeks leave to intervene. The company and the Board oppose it, the Board suggesting that we grant the union leave to file a brief as *amicus curiae.* We deny the motion and grant such leave.

Although courts of appeals have permitted a charging person to intervene in a proceeding brought by the Labor Board for enforcement of an order stemming from the charge or a proceeding brought by the condemned party to review such an order, § 10(e) and (f), see, e. g., West Texas Utilities Co. v. NLRB, 87 U.S.App.D.C. 179, 184 F.2d 233 (1950), cert. denied, 341 U.S. 939, 71 S.Ct. 999, 95 L.Ed. 1366 (1951); Kearney & Trecker Corp. v. NLRB, 210 F.2d 852 (7 Cir. 1954), cert. denied, 348 U.S. 824, 75 S.Ct. 38, 99 L.Ed. 649 (1954), all opinions of such courts discussing the issue that have been cited to us have ruled against intervention. See Aluminum Ore Co. v. NLRB, 131 F.2d 485, 488 (7 Cir. 1942); Stewart Die Casting Corp. v. NLRB, 132 F.2d 801 (7 Cir. 1942); Haleston Drug Stores, Inc. v. NLRB, 190 F.2d 1022 (9 Cir. 1950), cert. denied, 342 U.S. 815, 72 S.Ct. 29, 96 L.Ed. 616 (1951); NLRB v. Retail Clerks International Ass'n, 243 F.2d 777, 783 (9 Cir. 1956); Amalgamated Meat Cutters, etc. v. NLRB, 267 F.2d 169 (1 Cir.), cert. denied sub nom. Geilich Tanning Co. v. Amalgamated Meat Cutters, 361 U.S. 863, 80 S.Ct. 121, 4 L.Ed.2d 104 (1959). Since the issue has not been decided in this circuit, and the union contends that the decisions elsewhere contravene Supreme Court authority, we have thought it desirable to make an independent appraisal. After doing so, we join with other circuits in denying intervention, although the issue seems more debatable to us than it did to them.

* Sitting by designation.

Section 10(b) of the National Labor Relations Act defines the procedure for an unfair labor practice case. There must first be a charge of an unfair labor practice committed within the preceding six months; the Board or its agent may, but is not required to, issue a complaint. Only the person complained of is expressly given the right to a hearing. But "in the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony." As we read the Board's Rules and Regulations, § 102.8, 29 C.F.R. § 102.8 (1964), the charging person is recognized as a party to the administrative proceeding without the need for seeking intervention.

On the other hand the Act makes no provision as to intervention in proceedings for review or enforcement of Board orders—a silence which contrasts with the provisions as to intervention included in the statutes relating to judicial review of orders of the Interstate Commerce Commission, 28 U.S.C. § 2323, and in the Hobbs Act, 5 U.S.C. § 1038, but which is paralleled by a similar silence as to the review of orders of other administrative agencies, see, e. g., 15 U.S.C. § 717r (Natural Gas Act), 16 U.S.C. § 825l (Federal Power Act), 49 U.S.C. § 1486 (Federal Aviation Act), compare 49 U.S.C. § 1489. Rule 13 of this Court, our version of the uniform rule as to practice and procedure on review of agency action promulgated by the Judicial Conference as directed in the Hobbs Act, 5 U.S.C. § 1041, provides in paragraph (f) for a motion by "A person desiring to intervene in a case where the applicable statute does not provide for intervention" without saying what the standards governing intervention are. The fact that the union was accorded the status of an intervener before the Board does not automatically, entitle it to the same role in a proceeding for judicial review. Amalgamated Meat Cutters, etc. v. NLRB, supra, 267 F.2d at 170.

■ If we look to F.R.Civ.P. 24 by way of analogy, we ought consider subdivision (a) (2) granting intervention as of right "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action," and subdivision (b) (2) for permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Although on a superficial view both provisions might seem applicable, analysis shows neither to be. Normally a charging person has no "claim" of any sort apart from that which the Board elects to bring on his behalf; certainly that is true of the union here.[1] However deeply he may be concerned with the outcome of the Board's proceeding, Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738 (1940), holds that he does not have any legal "interest" since the purpose of the Labor Act is simply to enforce public rights—the Court analogizing the Act to the Federal Trade Commission Act and the role of a charging party under the former to that of an informant under the latter.

■ The union's first counter to this —that if the Board had rejected the complaint in whole or even in part, the union could have petitioned for review under § 10(f) as "any person aggrieved by a final order of the Board granting or denying in whole or in part the relief

[1]. A different case might—or might not— be presented when the charging person has a contractual claim which he submits initially to the Board because it may also involve an unfair labor practice. Cf. Smith v. Evening News Ass'n, 371 U.S. 195, 197–198, 83 S.Ct. 267, 9 L.Ed. 2d 246 (1962). Our opinion is not addressed to such a case. And the right of a respondent who has been wholly or partially successful before the Board, to intervene on a petition by the charging party to reverse or modify the Board's order, presents a problem wholly different from that here considered. Such intervention seems to have been regularly allowed, and there would appear to be no doubt as to its propriety.

sought," American Newspaper Publishers Ass'n v. NLRB, 345 U.S. 100, 73 S.Ct. 552, 97 L.Ed. 852 (1953)—is unpersuasive. As we have just pointed out in Local 282, International Brotherhood of Teamsters v.· NLRB, 339 F.2d 795 (2 Cir. 1964), the charging person is given standing to do this *ex necessitate* to prevent this portion of the statute from being rendered nugatory, and he is vindicating not a private but the public right. But the union then brings before us the ruling in International Union of Mine, Mill and Smelter Workers, Local No. 15 v. Eagle-Picher Mining & Smelting Co., 325 U.S. 335, 338–339, 65 S.Ct. 1166, 89 L.Ed. 1649 (1945), that unions, permitted to intervene in the court of appeals to support a petition by the Board to vacate a decree for back-pay so as to substitute another method, had standing to seek Supreme Court review of an order denying the Board's petition from which the Board had not sought certiorari. See also Donnelly Garment Co. v. NLRB, 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947). The Court supported its somewhat cryptic statement that "in the circumstances disclosed, the petitioners, though they could not have instituted enforcement proceedings, had standing to seek review of the order denying the Board's petition," with two citations. One, Williams v. Morgan, 111 U.S. 684, 4 S.Ct. 638, 28 L.Ed. 559 (1884), held that bondholders and a committee representing purchasers at a foreclosure sale had standing to seek review of an order as to a mortgage trustee's compensation. The other was the first round of Amalgamated Utility Workers, supra, Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 218, 59 S.Ct. 206, 83 L.Ed. 126 (1938), which recited the intervention of the alleged company unions as parties aggrieved by the order and of the charging union, seeking to organize the workers, in support of the order, without indicating whether these applications had been opposed.[2]

The Ninth Circuit, dealing with a problem somewhat different from that here presented, distinguished Eagle-Picher on the basis that the union there held to have standing to seek certiorari had already been allowed to intervene in the court of appeals. See NLRB v. Retail Clerks International Ass'n, supra, 243 F.2d at 783. It can be argued to the contrary that the Supreme Court would hardly have considered itself bound by an erroneous grant of intervention by a court of appeals. However, nothing indicates that anyone had resisted intervention in the court of appeals, in Eagle-Picher Mining & Smelting Co. v. NLRB, 141 F.2d 843 (8 Cir. 1944), and the propriety of such intervention was not even considered in the briefs submitted to the Supreme Court, where the NLRB argued the merits precisely as if it had taken the appeal itself. In this context, we cannot regard the Supreme Court's comment as resolving by implication the problem of contested intervention by a charging party in the courts of appeals.

The union suggests that intervention should be allowed in order to permit it to seek Supreme Court review of an adverse decision against the Board's opposition or to block a settlement to which the Board and the respondent might agree. If in fact intervention would permit this —a point which we do not decide—these considerations would weigh against the grant rather than for it. We have just held in Local 282 that the Board may settle over the wishes of the charging party prior to a hearing; no reason appears why the General Counsel could not abandon a case altogether at that stage if this seemed wise. The reasoning that sustains this power applies with almost the same force to the Board after it has

---

2. Examination of the records indicates that the company union had petitioned for review and that its petition was consolidated with the company's; and that the motion of the charging union to intervene was unopposed and was granted by a single judge.

passed on the merits of a complaint. While the energy already spent and the disharmony promoted are beyond recall, the public interest as viewed by the Board may yet dictate that the conflict proceed no further; and Amalgamated Utility Workers, which was itself concerned with post-decision rights of the charging party, makes the public interest controlling.

It is true that settlement or abandonment after a Board decision on the merits may leave a precedent on the books which is insulated from review. But the holding is discounted for that very reason, and the problem will likely arise again in some other case where a different balance of factors does not suggest compromise. There is no real analogy with the charging party's conceded right of review after an unfavorable Board decision, where, for example, an erroneous belief of lack of power by the Board might otherwise be perpetuated in case after case. The union also notes that, absent intervention, a charging party's ability to compel an application for certiorari from an adverse decision by us may turn on whether the Board's original decision upheld the party respondent or the charging party. We fear that such minor anomalies cannot be wholly ironed out of the legislative scheme,[3] and we here face no extraordinary abuse of administrative discretion testing the limits of judicial power to respond. Cf. Hourihan v. NLRB, 91 U.S. App.D.C. 316, 201 F.2d 187, 188 and note 4 (1952), cert. denied, 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953). The controlling principle must be that the Board's exclusive powers, granted by Congress in the public interest and more than once recognized by the Supreme Court, should not be impaired by a general practice of granting intervention to charging parties in the courts of appeals.

Motion to intervene denied, with leave to file brief as *amicus curiae*.

---

**3.** Asymmetry would also result if we allowed intervention to facilitate a charging party's applying for certiorari; any advantage would then turn on whether review or enforcement proceedings happened to be initiated, creating the opportunity to intervene, before the Board called a halt.