Nathaniel JAMES et al., Appellees,

v.

The **BEAUFORT COUNTY BOARD OF EDUCATION, a public body corporate, Appellant.**

No. 72–1065.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1972.

Decided Aug. 28, 1972.

Lee E. Knott, Jr., Washington, N. C. (McMullan, Knott & Carter, Washington, N. C., on brief), for appellant.

Adam Stein, Charlotte, N. C. (Chambers, Stein, Ferguson & Lanning and J. LeVonne Chambers, Charlotte, N. C., Conrad O. Pearson, Durham, N. C., Jack Greenberg, and Norman Chachkin, New York City, on brief), for appellees.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and BLATT, District Judge.

PER CURIAM:

Except for the issue of counsel fees, which is reserved for resolution in the *en banc* hearing ordered in James v. Beaufort County Board of Education, No. 72–1065, Copeland v. School Board of Portsmouth, Virginia, Nos. 71–1993 and 71–1994, Thompson v. School Board of Newport News, Virginia, Nos. 71–2032 and 71–2033, and Bradley v. School Board of Richmond, Virginia, No. 71–1774, the orders of the District Court herein are affirmed for the reasons stated in its memorandum opinion. It is axiomatic that an *ex parte* order, entered without notice or hearing, and apparently viewed by the issuing Court itself more as a mere administrative entry rather than as a formal judicial order, will not support a plea of *res judicata* or authorize an estoppel—and this is particularly true in a school integration case.

Affirmed.

BLATT, District Judge (concurring in part; dissenting in part):

Reserving the question of the allowance of attorneys' fees, the majority opinion affirms the Order of the District Court. Although I have the greatest respect for the wide and varied experience of the majority of this panel in matters similar to that here involved, I find myself unable to agree with all aspects of the majority opinion, and I, therefore, respectfully dissent from that part of the majority opinion which sustains the District Court's determination that the defendant-appellant, Beaufort County Board of Education, has discriminated in the employment and assignment of black teachers in its school system.

Recognizing that a prima facie case of racial discrimination in employment may be established by statistics, patterns, practices, and general policies, Brown v. Gaston County Dyeing Machine Co., (4 Cir.) 457 F.2d 1377, I agree with the majority that the Order of the District Court dated September 30, 1971, insofar as the claim of Nathaniel James is concerned, is not clearly erroneous and, under Rule 52(a) of the Federal Rules of Civil Procedure, should be affirmed. In reaching his determination of discrimination against the plaintiff, James, the District Court relied heavily on the raw personal data submitted by said plaintiff and apparently paid limited attention to the objective evaluations of plaintiff, James', abilities proffered by the School Superintendent, an expert in the management of school affairs. I would be remiss if I failed to state, at this point, my complete agreement with the principle so wisely advanced by Judge Boreman in his dissent in Massie v. Henry (4 Cir.), 455 F.2d 779, 787, that consideration should be given to the expertise of school officials since their expertise stems from first hand knowledge of the needs and requirements of a particular school or locality.

As a preamble to my reasons for my partial dissent in this case, I feel that a brief recitation of the facts upon which I have posited my dissent is in order.

In February, 1966, an action entitled Boomer v. Beaufort County Board of Education was instituted in the United States District Court for the Eastern District of North Carolina, seeking an Order permanently enjoining any racially discriminatory practices by the defendant in the operation of its public schools. In June, 1967, the North Carolina Teachers Association, (hereafter, NCTA), an organization composed primarily of black teachers, and a plaintiff-appellee in the instant case, was permitted to intervene as a party plaintiff in the Boomer case on the ground that the members of its organization constituted a class which had a substantial interest in the subject matter of that action and which class would be directly affected by the outcome of that suit.

On August 23, 1967, the District Court in the Boomer case ordered a freedom of choice desegregation plan to be implemented by the defendant. Thereafter, in order to completely desegregate the defendant's school system in compliance with Green v. County School Board (1968) 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, on August 5, 1968, the same District Court vitiated its earlier Order in the Boomer case and directed the defendant to establish a unitary school system and, as relevant to the instant action, the District Court further directed that all teacher employment and assignment practices should be conducted without consideration of race or color. To provide for the complete implementation of its Order of August 5, 1968, (hereafter Boomer II), the District Court directed the defendant to file with the Court on or before January 1, 1969, a report containing, among other things, a statistical breakdown of the racial composition of the faculties of each school operated under the jurisdiction of said defendant. Specifically and directly complying with this Order, the defendant filed such a report on December 31, 1968, which report set forth with statistical pellucidity the number and assignment of white and black teachers in the Beaufort County school system. While there is nothing in the record to indicate that a copy of this report was forwarded to the intervenor, the NCTA, or its attorneys, in my opinion, the NCTA, being cognizant of the filing requirement and having asserted such a strong interest in the outcome of the litigation so as to be allowed to intervene, was charged with knowledge that the report and its contents were a part of the record in that case. Finally, on April 10, 1969, apparently in ex parte fashion and without a hearing, the District Court in Boomer II issued its Order acknowledging receipt of the report of December 31, 1968, and gave approval to the report by stating that

"said Order entered August 5, 1968, has been *fully complied with* . . . " (emphasis added).

Based on the above sequence of events, I have concluded that the failure of the NCTA to object in any fashion to the report filed with the Court prior to the approval Order of the District Court, or to appeal from the Order of the District Court, constituted legal acquiescence to the contents of said report and created an irrebuttable presumption that prior to April 10, 1969, the NCTA found nothing in the report offensive to its interest in obviating racial discrimination against its members in the Beaufort County school system.

"As a general rule, he who participates or acquiesces in an action has no standing in a court of equity to complain against it; one may not stand by and make no objection to a proceeding in court with the anticipation that if it results favorably the benefits will be accepted, but that if it results unfavorably objections will be made." 31 C.J.S. Estoppel § 115a, page 602.

Furthermore, a party may not complain of error which he himself induced the Court to commit by his silence or acquiescence (Harris v. Jackson, (D.C. Okl.) 30 F.Supp. 185, 187), nor may a party voluntarily submit himself to an Order of a Court one day and avoid said Order the next day when its application proves more distasteful than he had anticipated (N.L.R.B. v. Retail Clerks International Association, (9 Cir.), 203 F. 2d 165, 169). Additionally, it is well established that even the most sacrosanct constitutional rights may be waived if such waiver is voluntarily, knowingly, and intelligently made. (D. H. Overmyer Co., Inc. of Ohio v. Frick Co., 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124).

Applying the aforesaid legal principles, it seems logical to me that the NCTA, having taken no steps to advise the District Court in *Boomer II* that the information or statistics presented in the defendant's report of December 31, 1968, perverted the goal of elimination of racial discrimination or ran counter to the specific intendments of the court's Order of August 5, 1968, should be estopped from relitigating an identical issue based solely on the identical statistics contained in the aforesaid report. Also, since the NCTA was, in my opinion, chargeable with knowledge of the filing in *Boomer II* of the report of December 31, 1968, and with the statistical contents of said report, I have concluded that the conduct of said plaintiff constituted an intentional abandonment or relinquishment of its known right or privilege (Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314), to thereafter submit the contents of this report as proof of racial discrimination in the Beaufort County school system.

Approximately one week subsequent to the District Court's Order of April 10, 1969, in *Boomer II*, the NCTA joined two individual plaintiffs in the filing of the instant suit. The sole basis for the NCTA's claim against the defendant in the present suit is that said defendant has continued to discriminate in its employment and assignment practices against black faculty and school personnel. It bottomed this contention on the identical statistical analysis contained in the report of December 31, 1968, in *Boomer II*, "approved" by the District Court on April 10, 1969, and, in my opinion, previously acquiesced in by the NCTA. Plaintiff NCTA has not explained satisfactorily why there was more than a three-months delay in attacking the report which was filed on December 31, 1968, knowledge of which was chargeable to plaintiff, and/or why plaintiff took no appeal from said Order of April 10, 1969. The report of December 31, 1968, was submitted in compliance with the Order of the Court and was approved by the Court. The Beaufort County School Board had no reason to anticipate that the District Court would approve the report and later use the same report to justify a finding of racial discrimination. It is abundantly clear to me from the record that the defendant construed

the April 10, 1969, Order to mean what I have concluded it meant—that the statistics embodied in the report reflected compliance with both the ministerial task assigned, the filing, and the substantive task, elimination of racial discrimination. It was incumbent upon the plaintiff NCTA to prosecute an appeal from the Order of the District Court of April 10, 1969, or to point out to the District Court that the defendant's report of December 31, 1968, in *Boomer II*, indicated continued racial discrimination rather than compliance (compliance being, in my opinion, the only reasonable interpretation of the April 10, 1969, Order) with the desegregation Order in *Boomer II*. Further, I think that the defendant school board acted with commendable alacrity in implementing the desegregation Order of August 5, 1968, in the short period of time available to them prior to the commencement of school for the fall term.

I recognize that absent the earlier filing and approval of this statistical data in *Boomer II*, the plaintiff's introduction of the same data in the instant case may have compelled me to agree with the majority that this aspect of the District Court's Order in the instant case was not clearly erroneous. Brown v. Gaston County Dyeing Machine Co., *supra*. But given the earlier filing in *Boomer II*, its explicit approval by the District Court, plaintiff's acquiescence thereto, and finally, my predilection for keeping final decisions final, I feel that the approval of the report by the District Court in *Boomer II*, regardless of any meaning that the District Court later, by inference, placed upon this approval, is conclusive against the plaintiff in the instant case on the issue of discrimination in employment and assignment practices. To allow plaintiff NCTA to prevail on this point, as the District Court and the majority have done, results in the anomaly of inconsistent judicial decisions which arise out of identical facts.

In conclusion, considering the magnitude of the task with which it was confronted, the herculean effort advanced by the defendant board to timely open its schools for the year 1968–1969 is reason for applause, not censure, and for the reasons heretofore expressed, I am of the opinion that the finding of racial discrimination in the employment and assignment practices of the school teachers and personnel was clearly erroneous and should be reversed.