**Tyler CREWS, b/n/f Borden Crews, his father, Plaintiff-Appellant,**

v.

**Eugene CLONCS, individually and as Principal of North Central High School, et al., Defendants-Appellees.**

**No. 18110.**

United States Court of Appeals, Seventh Circuit.

Aug. 10, 1970.

---

Henry J. Price, Craig Eldon Pinkus, David L. Allison, Thomas W. Ross, Indianapolis, Ind., for appellant.

Ben J. Weaver, Charles G. Reeder, William G. Baars, Indianapolis, Ind., for appellees.

Lewis C. Bose, Philip A. Nicely, Indianapolis, Ind., for Indiana School Boards Ass'n, amicus curiae; Bose, Buchanan, McKinney & Evans, Indianapolis, Ind., of counsel.

Before SWYGERT, Chief Judge, FAIRCHILD and CUMMINGS, Circuit Judges.

SWYGERT, Chief Judge.

Defendant Eugene Cloncs, principal, and the other named defendants, all officials of the Metropolitan School District of Washington Township, Marion County, Indiana, refused to readmit plaintiff, Tyler Crews, to North Central High School for the 1969–1970 term on the sole ground that the length of his hair failed to conform to unpublished school rules and regulations. Plaintiff brought this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343, 2201 seeking a preliminary and permanent injunction requiring defendants to permit him to attend regular classes at North Central. After a trial before the court, the district judge denied relief holding that defendants had presented facts sufficient to satisfy the "substantial burden of justification" required for interference with plaintiff's rights.[1] Shortly thereafter we handed down our decision in Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969). On January 12, 1970 on the motion of plaintiff and in light of our decision in Breen we ordered defendants to readmit Crews to North Central pending disposition of this appeal. For the reasons set forth below we reverse the decision of the district court.

Tyler Crews is a seventeen-year-old high school student. In keeping with the prevailing style among many of his generation, he chooses to wear his hair longer than is generally true of his elders. His reasons for this decision were stated in the district court as follows:

> I think it looks better for one reason, and for another reason, I don't associate with a group, but I try to disassociate with general society, you know, people that look normal, because I am not entirely satisfied with things that are happening like this.

Though a similar style prevailed among their own grandfathers, North Central school officials look upon Crews' long hair with great distaste and perceive it as a genuine threat to their own authority and to quality education.

Crews' difficulties with school authorities began in September 1967. At that time, although North Central had published no written rules governing the length of high school student's hair,[2] vice principal Billy Walker demanded that Crews get a haircut. Walker based

---

1. The decision of the district court is reported at 303 F.Supp. 1370 (S.D.Ind. 1969).

2. The only school publication concerning matters of dress and appearance was a letter sent to all parents at the beginning of the school year. The letter provided in part:

> The dress and general appearance of North Central students has been through the years a source of pride to the members of the school faculty. Studies have shown a positive correlation between the appearance of a person and his general behavior.
>
> \* \* \* \* \*
>
> Parents of North Central students are asked to assist their sons and daughters in maintaining a favorable standard of appearance at school.

The language of the letter indicates that it is intended merely as a suggestion to parents and not as a directive setting forth express standards with which students are expected to comply.

his action upon the school requirement that a student's hair must be "above the collar, above the ears and out of the eyes." Crews acquiesced and Walker apparently was satisfied. Acceptance of Crews' hair length, however, was not universal. In accordance with another unpublished rule delegating absolute authority to individual teachers to determine whether a student's appearance is suitable, Crews' gym teacher barred him from physical education classes for the entire 1967–68 school year. Crews also was excluded from his biology class for part of the school year.

At the end of the 1967–68 school year Cloncs informed Crews that he would not be readmitted to North Central in the fall unless he agreed to periodic haircuts. Rather than comply with this directive, plaintiff enrolled in night classes at the Broad Ripple High School during the 1968–69 school term.

Late in the spring of 1969 Crews again requested admission to North Central. At the regular school board meeting of the Metropolitan School District on June 16, 1969 a hearing was held concerning the Crews case. Plaintiff did not attend, but was represented at the meeting by his father, a lawyer, and a psychiatrist with whom plaintiff had been consulting. An additional meeting of the board was held on June 19 at which time the board adopted the following resolution:

> The history and record of Tyler Crews was presented to the Board of Education by Mr. Cloncs, Principal of North Central High School and Dean Evans, Assistant Superintendent.

After a thorough discussion of the matter, upon motion duly made, seconded and unanimously carried, the following resolution was adopted:

> 'BE IT RESOLVED, That the request for admission to North Central High School of Tyler Crews be denied, unless the said Tyler Crews conforms to the reasonable rules and regulations as to the length of his hair, for the best interests of the discipline, government and management of North Central High School.'

Plaintiff's action in the district court was commenced shortly thereafter.

■ Plaintiff raises several important constitutional issues including: (1) whether our recent decision in Soglin v. Kauffman, 418 F.2d 163 (7 Cir. 1969), permits the imposition of serious sanctions on long-haired students without the promulgation of written rules; (2) whether such rules are subject to the same vagueness and overbreadth standards applied in Soglin v. Kauffman;[3] (3) whether school board officials can delegate authority to each teacher to refuse class admittance to a student whose hair length the teacher deems unacceptable;[4] and (4) whether the hearing provided on June 16 and 19 satisfies the requirements of procedural

3. This Circuit has not previously decided whether or to what extent the principles of Soglin v. Kauffman, 418 F.2d 163 (1969), apply to high schools. Although we do not reach this issue, we note Judge Cummings' observation that "[G]reater flexibility may be permissible in regulations governing high school students than college codes of conduct because of the different characteristics of the educational institutions, the differences in the range of activities subject to discipline, and the age of students, cf. Scoville v. Board of Education, 425 F.2d 10 (7th Cir. 1970) (en banc)." Whitfield v. Simpson (E.D.Ill.), 312 F.Supp. 889 (1970) (dissenting opinion).

4. We agree that uncontrolled delegations of power create a substantial risk of arbitrary action which, especially when fundamental rights are involved, may violate due process. Cf. Niemotko v. Maryland, 340 U.S. 268, 271 S.Ct. 325, 95 L.Ed. 267 (1951); Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965). As a general rule, however, due process requires court intervention only if a plaintiff's interests cannot be effectively protected short of invalidating the delegation of power, Mann v. Powell, (N.D.Ill. Dec. 30, 1969), 314 F.Supp. 677. We choose not to decide the application of these principles in the present situation.

due process.[5] We do not consider these issues and instead decide only that the district court erred in holding the evidence presented by defendants satisfied the "substantial burden of justification" required by our decision in Breen v. Kahl, *supra.*

I

 It is now clearly established that the state does not possess an absolute right arbitrarily to refuse opportunities such as education in public schools or employment in public service. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). "[S]tate-operated schools may not be enclaves of totalitarianism. * * * [Students] are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State." Tinker v. Des Moines Independent Community School District, *supra* 393 U.S. at 511, 89 S.Ct. at 739. In order to protect these rights from arbitrary infringement, courts must judge the con-

stitutionality of disciplinary action which denies a student the opportunity to attend classes or to obtain equal opportunity to education. In making this judgment we must weigh and consider competing individual rights and the state's claim to an orderly and efficient educational system. Richards v. Thurston, 304 F.Supp. 449, 452 (D.Mass.), aff'd, 424 F.2d 1281 (1st Cir. 1970).

In *Breen* we held that plaintiff's right was of a high order of importance. Thus we stated: "The right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution." Breen v. Kahl, *supra,* 419 F.2d at 1036.[6] Our holding rested upon the premise that the Constitution contemplates protection for " 'additional fundamental right[s] * * * which exist alongside those fundamental rights specifically mentioned in the first eight amendments.' Griswold v. Connecticut, 381 U.S. 479, 488, 85 S.Ct. 1678, 14 L.Ed.2d 510 (J. Goldberg concurring)," and that these rights are protected liberties under the due process clause of the fourteenth amendment. There is ample support for the position that this was, indeed, the view of the founding fathers. Thus as the First Circuit has noted, citing Union Pacific

5. Plaintiff argues that the holding of Dixon v. Alabama Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), is applicable in the instant case. Again we are of the view that the considerations suggested by Judge Cummings in Whitfield v. Simpson, supra n. 3, may permit considerably wider latitude to high schools in fashioning disciplinary procedures.

6. The same or related position has been taken by many other courts. Richards v. Thurston, 304 F.Supp. 449 (D.Mass.), aff'd, 424 F.2d 1281 (1st Cir. 1970); Miller v. Gillis, 315 F.Supp. 94 (N.D.Ill. 1969); Farrell v. Smith, 310 F.Supp. 732 (D.Me.1970); Sims v. Colfax Community School District, 307 F.Supp. 485 (S.D. Iowa 1970); Westley v. Rossi, 305 F. Supp. 706 (D.Minn.1969); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969);

Zachry v. Brown, 299 F.Supp. 1360 (N.D. Ala.1967). See generally Note, 4 Valpo. L.Rev. 400. Some courts, including the district court in this case, have assumed the existence of a constitutionally protected right but have held that the state has presented sufficient evidentiary justification to infringe plaintiff's right. Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968); Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967), aff'd, 408 F.2d 1085 (5th Cir. 1969); Brick v. Board of Education, 305 F.Supp. 1316 (D.Colo.1969). Only the Sixth Circuit in Jackson v. Dorrier, 424 F.2d 213 (1970), appears to reject completely the proposition that students have a constitutionally protected right to wear their hair at any length or in any manner.

Ry. v. Botsford, 141 U.S. 250, 251, 11 S. Ct. 1000, 35 L.Ed. 734 (1891):

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right of one's person may, be said to be a right of complete immunity: to be let alone.' Richards v. Thurston, *supra*, 424 F.2d at 1285.

More recently the Supreme Court has recognized that the special right of an individual to control his physical person weighs heavily against arbitrary state intrusions. Breithaupt v. Abram, 352 U.S. 432, 439, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Indeed, unless the fundamental nature of the liberty claimed by plaintiff is recognized, the freedom guaranteed by the Bill of Rights could be significantly diluted through subtle forms of state repression and tyranny.[7]

In *Breen* we also recognized that "it would be impossible to comply with the long hair regulation during school hours and follow the wishes of the students and their parents as to hair length outside the school." Breen v. Kahl, *supra*, 419 F.2d at 1037–1038. Therefore, since the impact of hair regulations extends beyond the schoolhouse gate, the degree of state infringement on personal rights is significantly greater than in many other areas of school discipline. *See* Richards v. Thurston, *supra* 424 F.2d at

1286. As a result we held that "[t]o limit or curtail [plaintiff's right to wear his hair at any length or in any desired manner], * * * the state has a 'substantial burden of justification.' Griswold v. Connecticut, 381 U.S. 479 at 505, 85 S.Ct. 1678, 14 L.Ed.2d 510 (J. White concurring). *See* McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964)." Breen v. Kahl, *supra* 419 F.2d at 1036.

In *Breen* the school board offered two justifications to sustain its regulation:

> (1) a Williams Bay male high school student whose hair is longer than the Board's standard so departs from the norm that his appearance distracts his fellow students from their school work, and (2) students whose appearance conforms to community standards perform better in school.

Relying on the factual findings of the district court we held that the record failed to support either of these claims. We noted, however, that "[t]he record contains no suggestion that the length of the hair constituted a health problem or a physical obstruction or danger to any person [nor] was any disruption or disturbance caused by the length of his hair," and expressly reserved the question of "whether a valid showing of any single or combination of justifications, which the School Board did or did not raise, would be sufficient to satisfy the state's substantial burden." Breen v. Kahl, *supra* 419 F.2d at 1037. It is upon this basis that the defendants argue the case at bar is distinguishable from *Breen*.

---

7. History contains many examples of regimes which have attacked and silenced their opponents by requiring conformity of hairstyle or dress. Thus, following the Manchus' invasion of China in 1644, in order to consolidate its power over Chinese citizens, the founders of the Ching dynasty "transformed the appearance of the country by compelling the male population to shave the front of the head, and to wear the hair in a queue. Official dress was altered from the Chinese style * * * to the skullcap and Tartar gown with high collar and fastening at the side. In the first year or two after the conquest * * * the opposition to these measures was intense, and thousands of people from all walks of life chose to die rather than adapt the marks of servitude." H. McAleavy, History of Modern China, at 23 (1967). Another example includes official prohibition of beards during the reign of Peter the Great. See Richards v. Thurston, supra 424 F.2d at 1286.

## II

Although the district court rendered its decision prior to *Breen*, the court, nevertheless, correctly required the defendants to satisfy a "substantial burden of justification" for the exclusion of plaintiff from North Central. The court stated its holding in a conclusionary fashion and did not rely upon particular evidence in the record. However, in accordance with Fed.R.Civ.P. 52, we view the evidence in the light most favorable to the justifications advanced by defendants.

Defendants maintain that they have satisfied their burden under either of two theories. The first is that plaintiff's long hair *caused actual disruption* in the operation of North Central. The Supreme Court in Tinker v. Des Moines Independent Community School District, *supra* 393 U.S. at 514, 89 S.Ct. at 740, held that a school rule or. disciplinary action impinging on fundamental rights is valid only if the record contains evidence "which might reasonably have led school authorities to forecast substantial disruption of or material interference with school activities." We find insufficient evidence in the record to satisfy that test.

Evidence of disruption or interference in school activities presented in the district court consisted of the following testimony: (1) biology teacher Arlen Lickliter testified that some members of the zoology class "checked everyday through the prep room, with windows between, just to see if Tyler happened to be there that day;" (2) Lickliter also testified that Crews' presence caused a "strain" in Lickliter's relations with his students and that plaintiff experienced difficulty in obtaining a microscope partner because of the length of his hair; and (3) Dr. H. D. Evans, assistant superintendent for general administration, stated, without reference to particular facts, that long hair worn by a male student is inherently distracting to other students.

We think that opinion evidence such as that offered by Dr. Evans often reflects only a personal view of the propriety of long hair and, in the absence of factual support, adds little in satisfying defendants' burden. The reference in Lickliter's testimony to specific instances of alleged disruption presents a more difficult problem. These instances permit consideration of an issue expressly reserved in *Breen*, namely, whether and to what extent disruptive conduct of others in response to plaintiff's long hair, can be used to justify plaintiff's expulsion from school.

We agree with the sentiments voiced by Professor Chafee when he observed that it is absurd to punish a person "because his neighbors have no self-control and cannot refrain from violence," Z. Chafee, Free Speech in the United States, 151–52 (1941). This principle is generally applicable to prohibit the imposition of state sanctions on a speaker when his speech causes disruption or violence by a hostile crowd, Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *cf.* Gregory v. Chicago, 394 U.S. 111, 89 S. Ct. 946, 22 L.Ed.2d 134 (1969). Because of its relation to the achievement of education goals, the state interest in maintaining order may be greater in the school context than in society in general. Nevertheless, the Supreme Court has indicated that the principles announced in *Terminiello* are not without application when the free speech of students is threatened. Tinker v. Des Moines Independent Community School District, *supra* 393 U.S. at 508, 89 S.Ct. 733. We think a similar principle operates to protect long-haired students unless school officials have actively tried and failed to silence those persons actually engaged in disruptive conduct. Ferrell v. Dallas Independent School District, *supra* 392 F. 2d at 705 (Tuttle, J. dissenting); Richards v. Thurston, 304 F.Supp. 449, 454 (D.Mass.), aff'd, 424 F.2d 1281 (1st Cir. 1970). The record is silent, however, concerning actions taken by the school officials to punish those students who actually caused the relatively insubstantial disruption which occurred in this

case.[8] Therefore, we hold that defendants have failed to satisfy their substantial burden of justification under their first theory.

Defendants' second theory argues that short hair is required for health and safety reasons. Thus, Keith Farrand, chairman of the physical education department, testified that long hair may impair the vision of students engaged in sports such as flag football, tennis, and volleyball, and that long hair could "get caught" when students are using the trampoline. He also noted that students with long hair would be forced to go to class with wet hair after a shower following gym class. Lickliter testified that long hair creates significant danger when Bunsen burners are in use.

We think this testimony fails to satisfy defendants' burden of justification for two reasons. First, both Farrand and Lickliter admitted that health and safety objectives could be achieved through narrower rules directed specifically at the problems created by long hair. Thus, Farrand testified that long-haired boys could be made to wear shower caps and Lickliter conceded the use of hairnets worn by girls had prevented injury in the biology labs. Since fundamental rights are involved, we believe that defendants are required to employ narrow rules suggested by their testimony and to avoid infringement of plaintiff's rights to an extent greater than is required by health and safety objectives. *Cf.* N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

Second, both witnesses admitted in their testimony that although girls engage in substantially the same activities in gym and biology classes, only boys have been required to cut their hair in order to attend classes. Although classification on the basis of sex has been held constitutional in certain circumstances, Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Miskunas v. Union Carbide Corp., 399 F.2d 847 (7th Cir. 1968); *but cf.* McCrimmon v. Daley, 418 F.2d 366 (7th Cir. 1969), defendants have offered no reasons why health and safety objectives are not equally applicable to high school girls. On the present record, therefore, we believe that defendants' action constitutes a denial of equal protection to male students.

In conclusion, we hold that defendants have fallen far short of satisfying their burden of substantial justification required by our decision in *Breen*. We have examined the evidence in this case with a great deal of care. Despite the rationalizations offered by defendants, we believe that their action in excluding plaintiff from North Central resulted primarily from a distaste for persons like plaintiff who do not conform to society's norms as perceived by defendants.

The judgment of the district court is reversed and the cause is remanded for entry of an injunction consistent with the holding of this case.

---

8. If school officials have tried and failed to control the disruptive students, emergency action against the long-haired student may be justified only by exceptional circumstances. *See generally* Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). We need not decide whether temporary suspension or other temporary action rather than expulsion from school would be the appropriate remedy under these circumstances. *See* Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).