**Joseph Edward MASSIE, Jr., et al.,**
**Appellants,**

v.

**Stanley .HENRY, Chairman of Board of Education of Haywood County, N. C., et al., Appellees.**

**No. 15325.**

United States Court of Appeals,
Fourth Circuit.

Submitted on Briefs May 4, 1971.

Decided Feb. 2, 1972.

Boreman, Senior Circuit Judge, dissented and filed an opinion.

George S. Daly, Jr., Charlotte, N. C., on brief for appellants.

Hallett S. Ward, Jr., and Morgan, Ward & Brown, Waynesville, N. C., on brief for appellees.

Before HAYNSWORTH, Chief Judge, and BOREMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

The minor plaintiffs, male students at the Tuscola Senior High School, Haywood County, North Carolina, were suspended from school for their deliberate refusal to conform to a "guide line," recommended by a student-faculty-parent committee and adopted by the high school principal, regulating the length of hair and side burns. Plaintiffs wore their hair at a length extending below their collars and below and covering their ears; and at least two of the plaintiffs wore their side burns below their ear lobes, all in violation of the regulation. Their suit for declaratory and injunctive relief under 42 U.S.C.A. § 1983 followed. The district court, finding the regulation justified, and finding that none of plaintiffs' constitutional rights had been denied them, dismissed the action. We reverse.

– I –

The operative facts proved at the trial and found by the district court are as stated. Additionally, the district court found that establishment of the regulation had been requested by the President of the Student Body following an incident in which a student with long hair was called a "hippie" and a fight ensued.

There was also evidence before the district court that the length of plaintiffs' hair evoked considerable jest, disgust and amusement rendering the restoration and preservation of order in the classrooms difficult. Two "long hair" students reported that they had been threatened with being beaten up. One teacher said that plaintiffs had difficulty in writing on the black board because their hair fell into their eyes. A welding instructor stated that he would not permit a student with long hair to take his course or even enter his classroom because of the danger of fire and injury from flying sparks and molten metal particles.

There was no claim that plaintiffs' hair was unhygienic. Indeed, plaintiffs testified that they washed it daily, and the district judge said that it appeared clean and well-groomed when plaintiffs were in court.

– II –

Whether the right of a male to wear long hair and to have long or fulsome side burns is a constitutionally protected right is a question which has given birth to a rash of recent litigation resulting in conflicting adjudications. And if the right is recognized as a constitutionally protected one, there is a similar lack of agreement as to its precise nature, that is, the chapter and verse of the Constitution which protects it. Unquestionably, the issue is current because there is abroad a trend for the male to dress himself more extravagantly both in the nature, cut and color of his clothing and the quantity and mode of his facial and tonsorial adornment. The shift in fashion has been more warmly embraced by the young, but even some of the members of this court, our male law clerks and counsel who appear before us have not been impervious to it. With respect to hair, this is no more than a harkening back to the fashion of earlier years. For example, many of the founding fathers, as well as General Grant and General Lee, wore their hair (either real or false) in a style comparable to that adopted by plaintiffs. Although there exists no depiction of Jesus Christ, either reputedly or historically accurate, He has always been shown with hair at least the length of that of plaintiffs. If the validity and enforcement of the regulation in issue is sustained, it follows that none of these persons would have been permitted to attend Tuscola Senior High School.*

* Substantially every president of the United States serving before the time of Woodrow Wilson would also have been in violation of this regulation. After Garfield, occupants of the White House had their hair cut somewhat shorter, but Arthur's mutton chop sideburns, Harrison's full beard and the mustaches of Cleveland, Roosevelt and Taft would have been in violation of the regulation. Before Wilson, only McKinley might have passed muster. Although presidents may

## – III –

If we limit ourselves only to dscisions of United States Courts of Appeals, we find that the Fifth Circuit, in Ferrell v. Dallas Independent School District, 392 F.2d 697 (5 Cir. 1968), cert. den., 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968), upheld the validity and enforcement of a school regulation which excluded male students having a "Beatle type haircut" upon the mere showing that their presence in the schools might be disruptive. Circuit Judge Tuttle dissented, expressing the view that equal protection had been denied, and that the majority was overly prone to limit the exercise of constitutional rights because of the possibility that disorder, resistance or violence might ensue. Although *Ferrell* implicitly and explicitly assumed a constitutional right to select the length of one's hair, later Fifth Circuit decisions appear to proceed on the basis that the right to select the length of one's hair is too insubstantial to warrant federal court consideration. Wood v. Alamo Heights Independent School District, 433 F.2d 355 (5 Cir. 1970); Stevenson v. Board of Ed. of Wheeler County, Georgia, 426 F.2d 1154 (5 Cir. 1970), cert. den., 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); Griffin v. Tatum, 425 F.2d 201 (5 Cir. 1970); Davis v. Firment, 408 F.2d 1085 (5 Cir. 1969).

The Sixth Circuit in Jackson v. Dorrier, 424 F.2d 213 (6 Cir. 1970), cert. den., 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed. 2d 88 (1970), followed the Fifth Circuit's decision in *Ferrell*. The Sixth Circuit held, upon evidence that the wearing of excessively long hair caused classroom disruption and constituted a distraction from the educational process, that there was no violation of a First Amendment right (the evidence was that the "long hair" students adopted that style to further a musical group of which they were members), that there was no denial of substantive or procedural due process,

that there was no denial of equal protection (the district court had found that the regulation banning long hair had a real and reasonable connection with successful operation of the educational system and the maintenance of discipline) and that there had been no violation of the right of privacy. Accordingly, it sustained enforcement of a regulation which was applied to prohibit the wearing of excessively long hair and suspension of students who violated it.

More recently, the Ninth Circuit has held that a suit by male students who objected to compliance with a school regulation limiting the length of their hair failed to establish "the existence of any substantial constitutional right . . . . being infringed," King v. Saddleback Junior College District, 445 F.2d 932, 940 (9 Cir. 1971); and the Tenth Circuit has followed the lead of the Fifth Circuit in treating the problem as one too insubstantial to justify cognizance of it in the federal courts. Freeman v. Flake, 448 F.2d 258 (10 Cir. 1971).

In contrast, the First, Seventh and Eighth Circuits have found regulations limiting the length of hair invalid, at least in the absence of persuasive reason and persuasive proof to support their promulgation and enforcement. Their approach to these issues is quite different from that of the other circuits. See note, 84 Harv.L.Rev. 1702 (1971). See also, the opinion of Mr. Justice Douglas dissenting with regard to the denial of certiorari in Olff v. East Side Union High School District, 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972). In Breen v. Kahl, 419 F.2d 1034 (7 Cir. 1969), cert. den., 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970), it was held that the right to select the length of one's hair was a due process right, falling within the penumbras of the First Amendment or within the rights guaranteed by the Ninth Amendment, and one which could be limited only upon a showing of substantial countervailing state interests.

have responded sooner to the trend to shorter hair, older men, within the memory of some of the judges of this court,

were frequently seen with their hair long enough to have been in violation of this regulation.

In *Breen,* the regulation was invalidated and the expulsion and threatened expulsions were nullified. The court rejected the state justification that long hair *may* distract short haired students from their school work, that students whose appearance conforms to community standards perform better in school, and that, in any event, the power of a school board to discipline must be upheld.

Factually, *Breen* is distinguishable from the case at bar and the decision in *Ferrell* but Crews v. Cloncs, 432 F.2d 1259 (7 Cir. 1970), which followed, is more in point. In *Crews,* a male student with long hair was denied readmission to high school because of the length of his hair. In holding that the student was entitled to an injunction to require his readmission, the court reiterated its holding in *Breen* that the right to select the length of one's hair was a personal freedom protected by the Constitution and then considered whether the substantial burden of justification to limit the right had been shown. The court rejected, as sufficient grounds of justification, evidence that other students were distracted and preoccupied in observing the plaintiff, and evidence that short hair was required for health and safety reasons when engaging in athletics or laboratory work around Bunsen burners. As to the former, the court invoked the principle that it is absurd to punish a person because his neighbors lack self-control and cannot refrain from violence; and, as to the latter, the court concluded that the objectives of health and safety could be achieved by use of hair nets or other protective devices.

Richards v. Thurston, 424 F.2d 1281 (1 Cir. 1970), was decided on the sparse facts that the male student, whose hair fell loosely about his shoulders, was suspended from school because of an unwritten policy (treated as a regulation) prohibiting "unusually long hair." An injunction to require his reinstatement was affirmed, the court holding that the right to select the length and style of one's hair was a personal right of liberty protected by the due process clause

and that that right could be limited only by an outweighing state interest justifying the intrusion. Because the record was so bare, the court had no occasion to discuss specific evidence, but it elaborated on the outweighing state interest by saying:

Once the personal liberty is shown, the countervailing interest must either be self-evident or be affirmatively shown. We see no inherent reason why decency, decorum, or good conduct requires a boy to wear his hair short. Certainly eccentric hair styling is no longer a reliable signal of perverse behavior. We do not believe that mere unattractiveness in the eyes of some parents, teachers, or students, short of uncleanliness, can justify the proscription. Nor, finally, does such compelled conformity to conventional standards of appearance seem a justifiable part of the educational process.

*Id.,* 424 F.2d at 1286.

Finally, Bishop v. Colaw, 450 F.2d 1069 (8 Cir., 1971), the latest expression on the subject, held invalid and unenforceable a dress regulation which, *inter alia,* required male students to wear their hair at a length shorter than their collar and above their ears. The Court considered thoroughly prior court of appeals, as well as district court, decisions on the subject. It rejected the claim that the plaintiff (Stephen) was deprived of any First Amendment right for lack of any "evidence suggesting that Stephen's hairstyle represented a symbolic expression of any kind," 450 F.2d at 1074; and while it noted the possibility of a claim of denial of equal protection (discrimination between males with differing hair lengths), it declined to pass on this issue. It also rejected the argument that the regulation violated Stephen's parents' rights because the record showed that they supported but did not select Stephen's hairstyle. It did hold, however, that Stephen had a due process right to govern his own personal appearance, declining in the process to choose a label as to whether the right was "fundamental," "substantial," "basic," or simply

a "right," but that the right was not absolute and must yield when its exercise infringed upon the rights of others. The court then examined the purported justifications for the regulation, i. e., disruption in the classroom, sanitation problem in the swimming pool, safety problem in shop classes, and asserted correlation of long hair with poor grades, and, finding them insufficient to demonstrate the necessity for the regulation, invalidated it.

## – IV –

We find *Breen, Crews, Richards* and *Bishop,* and their decisional approaches, more persuasive than *Ferrell* and its progeny, and we have concluded to follow the former.

■ Perhaps the length of one's hair may be symbolic speech which under some circumstances is entitled to the protection of the First Amendment. But the record before us does not establish that the minor plaintiffs selected the length of their hair for any reasons other than personal preference. For that reason, we prefer in this case to treat their right to wear their hair as they wish as an aspect of the right to be secure in one's person guaranteed by the due process clause, Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 35 L.Ed. 734 (1891); Bishop v. Colaw, 450 F.2d at 1075; Clews v. Cloncs, *supra,* 432 F.2d at 1263–1264; Richards v. Thurston, *supra,* 424 F.2d at 1284–1285, but having overlapping equal protection clause considerations since the purported limitation of the right was by a state public school official. But, our inquiry is not ended by this conclusion, because, as said in Bishop v. Colaw, 450 F.2d at 1075, "[p]ersonal freedoms are not absolute; they must yield when they intrude upon the freedoms of others. Our task, therefore, is to weigh the competing interests asserted here. In doing so, we proceed from the premise that the school administration carries the burden of establishing the necessity of infringing upon Stephen's freedom in order to carry out the educational mission of the . . . High School."

■ So, too, we turn to the sufficiency of proof of state interest and violation of the rights of others in this case which may constitute justification for the regulation. There was no evidence that consideration of health entered into the picture; the only claimed justifications were the need for discipline and considerations of safety. We think the proof of the disruptive effect of some students having long hair was insufficient to justify the regulation and its enforcement. Proof that jest, disgust and amusement were evoked, rendering restoration and preservation of order difficult, and that there were threats of violence was insufficient. Moreover, there was no proof of the ineffectiveness of discipline of disrupters or a showing of any concerted effort to convey the salutary teaching that there is little merit in conformity for the sake of conformity and that one may exercise a personal right in the manner that he chooses so long as he does not run afoul of considerations of safety, cleanliness and decency. In short, we are inclined to think that faculty leadership in promoting and enforcing an attitude of tolerance rather than one of suppression or derision would obviate the relatively minor disruptions which have occurred.

■ The asserted considerations of safety need not detain us long. Unrestrained or unprotected long hair is undoubtedly a safety hazard in a welding shop or in a laboratory where Bunsen burners or other fire are present, but it is manifest that hairbands, hairnets or protective caps provide a complete solution, short of shearing one's locks. Requiring restraint or protection is, we think, the manner in which the state interest should be asserted.

Since the regulation lacks justification outweighing the minor plaintiffs' rights, the district court should declare it invalid and enjoin its enforcement in the particulars alleged.

Reversed and remanded.

BOREMAN, Senior Circuit Judge (dissenting):

The operation of public schools and the safeguarding of public education have traditionally been the responsibility of the several states. As the Supreme Court recently declared in Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968):

> By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not *directly and sharply* implicate basic constitutional values. (Emphasis added.)

The issue herein, as I see it, is whether a conflict arising over the length of a schoolboy's hair and the possible effects thereof on educational environment "directly and sharply" implicates a basic constitutional value. I reach the opinion that it does not and that therefore the resolution of the conflict should be entirely within the control of the local authorities.

The majority concludes that the constitutional right involved here is "an aspect of the right to be secure in one's person guaranteed by the due process clause," with "overlapping equal protection clause considerations." It is difficult to understand how such a general and imprecise statement would support a direct and sharp implication of "basic constitutional values." [1] I respectfully disagree with the implied determination of the majority that a male student's interest in maintaining a personally preferred hair style so "directly and sharply" implicates these constitutional

values as to give federal courts the power and obligation to review a regulation promulgated by local school authorities such as the one here involved.

There is no hint here of an improper motivation or arbitrary procedure by the school officials in establishing the regulation or an uneven application thereof. Further, there is no specific clause in the Constitution which may be said to expressly prohibit regulation of a male student's hair length by local school authorities. Thus the invalidation of the regulation on due process grounds would appear to be no more than a substitution of the majority's judgment concerning the reasonableness of the regulation for that of the local officials. Simply stated, the school authorities, who must deal with such problems on a daily basis, say that the regulation is reasonable and necessary for reasons of safety and the maintenance of order; my colleagues say that it is not. Facts giving rise to nothing more than such differences of personal opinion and which do not clearly fall under a specific constitutional prohibition cannot, in my view, be said to "directly and sharply" implicate basic constitutional values.

Indeed, the majority decision might be criticized on the merits as representing a return to the day when courts regularly struck down state legislation as violative of the due process clause if the legislation was thought to be "unreasonable," a long since discarded test of constitutionality discussed fully in the dissenting opinion of the late Mr. Justice Black in Tinker v. Des Moines School Dist., 393 U.S. 503, 518–523, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). [2] I find it unnecessary to reach this question, however, in view of my conclusion that the

---

1. The general confusion, noted by the majority, as to precisely which constitutional right, if any, is involved when a student is prohibited from letting his hair grow to a desired length, perhaps is, in itself, indicative that there is *none*. Such confusion surely indicates to me that a specific constitutional right is not "directly and sharply" implicated.

2. *See* Waugh v. Mississippi University, 237 U.S. 589, 597, 35 S.Ct. 720, 723, 59 L.Ed. 1131 (1915), wherein the Supreme Court upheld a Mississippi statute prohibiting the existence of Greek fraternities in Mississippi colleges. "It is not for us to entertain conjectures in opposition to the views of the State and annul its regulations upon disputable considerations of their wisdom or necessity."

matter is simply not a proper one for litigation in the federal courts.

Perhaps the fallacy inherent in the majority's reliance on the due process clause is best seen by contrasting this case with the decision of the Supreme Court in Tinker v. Des Moines School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In that case the Court held unconstitutional a policy adopted by Des Moines school principals which would suspend any student who wore and refused to remove a black armband to publicize his objections to the war in Vietnam. That decision was based on the determination that the wearing of an armband was a symbolic act within the free speech clause of the First Amendment. As such, it was an act which "directly and sharply" implicated a constitutional right of precise nature. The Court expressly noted, 393 U.S. at 507–508, 89 S.Ct. at 737:

> [T]he Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools. See Epperson v. Arkansas . . . . Our problem lies in the areas where students in the exercise

of First Amendment rights collide with the Rules of the school authorities.

.    .    .    .    .    .

The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. . . . Our problem involves direct, primary First Amendment rights akin to "pure speech."

The general rule against judicial interference with public education as expressed in Epperson v. Arkansas, *supra,* and the concerns of the late Mr. Justice Black as expressed in his dissent in *Tinker*[3] relating to the limitations of the due process clause, seem clearly applicable where, as here, the nature of the "constitutional value" asserted is nebulous and the facts only inferentially are within its protection.

It is unclear from the majority opinion as to exactly how or in what manner the equal protection clause is here implicated. The majority's holding that the issue has "overlapping equal protection clause considerations since the purported limitation of the right was by a state public school official" appears susceptible to at least three interpretations. If, as the majority's language at first blush

---

3. Other comments of Mr. Justice Black dissenting in *Tinker* bear repetition here, 393 U.S. at 515, 524–525, 89 S.Ct. at 741, 746:

> The Court's holding in this case ushers in what I deem to be an entirely new era in which the power to control pupils by the elected "officials of state supported public schools . . ." in the United States is in ultimate effect transferred to the Supreme Court.
>
> .    .    .    .    .    .
>
> Change has been said to be truly the law of life but sometimes the old and the tried and true are worth holding. The schools of this Nation have undoubtedly contributed to giving us tranquility and to making us a more law-abiding people. Uncontrolled and uncontrollable liberty is an enemy to domestic peace. We cannot close our eyes to the fact that some of the country's greatest problems are crimes committed by the youth, too many of school

age. School discipline, like parental discipline, is an integral and important part of training our children to be good citizens—to be better citizens. Here a very small number of students have crisply and summarily refused to obey a school order designed to give pupils who want to learn the opportunity to do so. One does not need to be a prophet or the son of a prophet to know that after the Court's holding today some students . . . in all schools will be ready, able, and willing to defy their teachers on practically all orders. . . . I, for one, am not fully persuaded that school pupils are wise enough, even with this Court's expert help from Washington, to run the 23,390 public school systems in our 50 States.

To me, the position taken by the majority in the instant case tends to emphasize the merit of Justice Black's observations and expressions of concern.

would seem to indicate, it is meant that there is discrimination as between students and nonstudents, I would counter it is patently arguable, if not manifest, that the need for disciplinary rules designed to provide an orderly educational environment for students is present and that the resulting discrimination against them could in no way be considered invidious. If it is meant that there is discrimination as between boy students and girl students,[4] the answer is simply that long hair for girls has long been accepted as a matter of social custom and therefore constitutes no threat to an orderly educational system. If it is meant that there is discrimination as between long-haired male students and short-haired male students with respect to the equal right to obtain an education,[5] I would submit that the right of an individual to an education in the public schools is not protected and assured in the face of his demonstrated unwillingness to obey rules of conduct designed to further the educational opportunities of all. I conclude that application of the equal protection clause, if implicated at all, is not "directly and sharply" brought into question by the facts of this case.

My colleagues' determination that there was no sufficient showing by the defendants of disruption attributable to plaintiffs' long hair poses an additional problem for me. I agree with the position of Senior Judge Duffy as expressed in his dissenting opinion in Breen v. Kahl, 419 F.2d 1034, 1039 (7 Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970):

A point emphasized by the District Court and apparently approved by my colleagues, is that there was no sufficient proof that the long hair worn by Breen was a disruptive influence. However, if Breen had gone to his classes carrying a sign which stated "I am defying school regulations as to required hair length," the effect would not be different. Why is formal proof necessary for something that is so obvious? All of the students were aware of the rule forbidding the boys wearing long hair and every time Breen appeared with his flowing locks, he was showing his defiance of and his contempt for the school authorities and the regulations as to hair length.

A somewhat similar position was adopted by the court in King v. Saddleback Junior College District, 445 F.2d 932 (9 Cir. 1971), cert. denied,[6] 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1972), and its companion case, Olff v. East Side Union High School District, *Id.* The Court there stated, 445 F.2d at 940:

Much emphasis was placed upon the fact that no disruption had occurred in either school even though some of the male students wore long hair. Disruption, of course, if related, would be significant. Its absence, however, does not establish that long-haired males cannot be a distracting influence which would interfere with the educative process the same as any extreme in appearance, dress, or deportment.

In *King* and *Olff,* cases which involved regulations pertaining to hair styling very similar to the one at issue in the

4. *See, e. g.,* Crews v. Cloncs, 432 F.2d 1259, 1266 (7 Cir. 1970).

5. *See, e. g.,* Calbillo v. San Jacinto Junior College, 305 F.Supp. 857 (S.D.Tex.1969), remanded for reconsideration on the ground of mootness, 434 F.2d 609 (5 Cir. 1970); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967).

6. The Supreme Court has consistently declined to decide the constitutional challenge to the attempts of school authorities to proscribe a student's choice of hair style. *See also* Jackson v. Dorrier,

424 F.2d 213 (6 Cir. 1970), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88; Breen v. Kahl, 419 F.2d 1034 (7 Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970). In view of the Court's frequent recognition of an apparent obligation to resolve issues which have occasioned a division among the circuits, its apparent reluctance to review the conflict in "long-hair" cases is perhaps somewhat indicative of the importance or lack thereof which the Court attaches to the problem.

instant case, the court concluded, 445 F.2d at 940:

> This is not a question of preference for or against certain male hair styles or the length to which persons desire to wear their hair. This court could not care less. It is a question of the right of school authorities to develop a code of dress and conduct best conducive to the fulfillment of their responsibility to educate, and to do it without unconstitutionally infringing upon the rights of those who must live under it. We do not believe that the plaintiffs have established the existence of any substantial constitutional right which is in these two instances being infringed. We are satisfied that the school authorities have acted with consideration for the rights and feelings of their students and have enacted their codes, including the ones in question here, in the best interests of the educational process. A court might disagree with their professional judgment, but it should not take over the operation of their schools.

The general rule against federal judicial interference in the public schools is supported by sound policy considerations. Primary among these is the proper allocation of power within a federal republic as influenced by the need for the expertise which comes only with first-hand knowledge and experience as to the requirements of a particular school or locality. With respect to rules of conduct and discipline as established by local officials, additional factors must be recognized. The very fact of such judicial interference, for example, must in and of itself tend to contribute to a breakdown of order and discipline. A student who successfully challenges a school policy or regulation would be encouraged to disregard other regulations and other students might well be similarly tempted.

The instant case illustrates another problem which arises when courts are willing to interfere with the control of students' conduct. As the district court below found:

> The testimony discloses that the plaintiffs have not been involved in any prior disciplinary proceeding at this school and that all four of them would be classified as below average in academic achievement. Their attendance records have been poor and they appear to have very little interest in school. All of them are failing some of their work and the plaintiff Massie is failing more than half of his subjects.

> The testimony indicates without doubt that the plaintiffs are intelligent young men who are not performing in school anywhere near their capacity. All of them scored more than average on the college entrance examinations. It is apparent that they have allowed their quarrel with the School Board and the high school authorities to interfere with their school work. Their attendance record prior to suspension was poor indeed. *They deliberately and intentionally allowed their hair to grow longer than permitted by the dress code and requested their favorite teacher to report them as being in violation. This was apparently done for the purpose of being suspended to test the guidelines in federal court.* (Emphasis added.)

To me these findings indicate that plaintiffs, admittedly bright and intelligent but apparently not too ambitious or successful as students, are seeking to use the federal courts as a diversion from the boredom of their school work and as a means of seeking a measure of recognition and notoriety among their fellow students. The majority decision would seem to insure the success of their tactics as well as to foster the creation of similar future problems for the school authorities.

Fully aware of the existence of numerous decisions in which the courts are in conflict I favor the approach of the court in Freeman v. Flake, 448 F.2d 258

(10 Cir. 1971).[7] The court there stated, 448 F.2d at 259, 262:

> We are convinced that the United States Constitution and statutes do not impose on the federal courts the duty and responsibility of supervising the length of a student's hair. The problem, if it exists, is one for the states and should be handled through state procedures.
>
> .  .  .  .  .  .
>
> Complaints which are based on nothing more than school regulations of the length of a male student's hair do not "directly and sharply implicate basic constitutional values" and are not cognizable in federal courts. . . .

My position may best be summarized by quoting from the opinion of Mr. Justice Black, sitting as an Individual Justice assigned to the Fifth Circuit, in Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971). School authorities in El Paso, Texas, adopted a rule providing that schoolboys' hair must not "hang over the ears or the top of the collar of a standard dress shirt and must not obstruct vision." The district court enjoined the enforcement of this rule as violative of the Due Process and Equal Protection Clauses. The Court of Appeals for the Fifth Circuit stayed and suspended the district court's injunction and the students presented to Justice Black an "Emergency Motion to Vacate Stay of Injunction Pending Appeal." In denying this motion Mr. Justice Black stated:

> I refuse to hold for myself that the federal courts have constitutional power to interfere in this way with the public school system operated by the States. And I furthermore refuse to predict that our Court will hold they have such power. . . . And I cannot now predict this Court will hold that the more or less vague terms of either the Due Process or Equal Protection Clause have robbed the States of their traditionally recognized power to run their school systems in accordance with their own best judgment as to the appropriate length of hair for students.
>
> The motion in this case is presented to me in a record of more than 50 pages, not counting a number of exhibits. The words used throughout the record such as "Emergency Motion" and "harassment" and "irreparable damages" are calculated to leave the impression that this case over the length of hair has created or is about to create a great national "crisis." I confess my inability to understand how anyone would thus classify this hair length case. The only thing about it that borders on the serious to me is the idea that anyone should think the Federal Constitution imposes on the United States courts the burden of supervising the length of hair that public school students should wear. The records of the federal courts, including ours, show a heavy burden of litigation in connection with cases of great importance—the kind of litigation our courts must be able to handle if they are to perform their responsibility to our society. Moreover, our Constitution has sought to distribute the powers of government in this Nation between the United States and the States. Surely the federal judiciary can perform no greater service to the Nation than to leave the States unhampered in the performance of their

7. As noted by the majority, the approach of the Fifth Circuit appears to be somewhat similar. However, that court would require only that the federal courts abstain from deciding the merits of a "longhair" case until plaintiffs have wholly exhausted state procedures. Wood v. Alamo Heights Independent School District, 433 F.2d 355 (5 Cir. 1970); Stevenson v. Board of Ed. of Wheeler County, Georgia, 426 F.2d 1154 (5 Cir. 1970), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265; Griffin v. Tatum, 425 F.2d 201 (5 Cir. 1970); Davis v. Firment, 408 F.2d 1085 (5 Cir. 1969). In agreement with Freeman v. Flake, *supra*, 448 F.2d 258, I would go further and hold that these claims are simply not cognizable in federal courts.

purely local affairs. Surely few policies can be thought of that States are more capable of deciding than the length of the hair of schoolboys. There can, of course, be honest differences of opinion as to whether any government, state or federal, should as a matter of public policy regulate the length of haircuts, but it would be difficult to prove by reason, logic, or common sense that the federal judiciary is more competent to deal with hair length than are the local school authorities and state legislatures of all our 50 States. Perhaps if the courts will leave the States free to perform their own constitutional duties they will at least be able successfully to regulate the length of hair their public school students can wear.

I respectfully dissent.[8]

Murrah, Circuit Judge, did not participate.

---

8. The temptation to offer this further observation is irresistible. The hair styles worn by our founding fathers and men of past generations and the possible effects thereof on the attendance of those noted individuals at *Tuscola Senior High School* are surely not material to the case at bar. However, if such hypotheses are to be considered, I think the issue should be properly stated within the context of the traditional limitations on the powers of federal courts to interfere in state-operated public schools.