573 F.2d 395
 Michael J. PENCE, Plaintiff-Appellant,
v.
Lee F. ROSENQUIST, Assistant Superintendent, Lincoln-Way
Community High School, Joe Kruzich, Superintendent,
Lincoln-Way Community High School, Ronald W. Schaper, Hans
W. Mueller, James Fagan, Beatrice Link, Don Schroeder, James
Thompson and Mary McKendry, as members of the Board of
Education of Lincoln-Way Community High School District No.
210, Defendants-Appellees.
 No. 77-2132.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 5, 1977.
Decided Feb. 2, 1978.
 
 Gilbert A. Cornfield, Chicago, Ill., for plaintiff-appellant.
 Robert J. Baron, Joliet, Ill., for defendants-appellees.
 Before FAIRCHILD, Chief Judge, and PELL and WOOD, Circuit Judges.
 FAIRCHILD, Chief Judge.
 
 
 1
 This is an appeal from judgment[1] entered after defendants' motion for summary judgment was granted. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 I. BACKGROUND
 
 2
 Plaintiff-Appellant Michael J. Pence was employed by Lincoln-Way Community High School District No. 210 in two capacities: as a tenured high school mathematics teacher and as a part-time school bus driver. During the summer of 1975, Pence grew, what was agreed by all parties to be, a "neat and groomed" mustache. At the start of the school year, Pence was suspended from employment as a bus driver, but not from his teaching position, by Defendants Rosenquist and Kruzich, Assistant Superintendent and Superintendent of the School District, respectively. The suspension was unopposed by the School Board, whose members are the other defendants in this case.
 
 
 3
 The mustache, and appellant's refusal to shave it off, were the primary reason for the suspension. Although there is a factual dispute whether suspension of bearded and mustachioed employees was a regular and well-known policy of the District, for the purposes of this appeal, we shall assume there was such a policy and that plaintiff was aware of it. According to the Superintendent's affidavit, the decision to suspend appellant was based not on the School District-created policy, but on the broader policy requiring a "neat and clean appearance" promulgated by the Illinois Office of Education (IOE) and adopted in the District's Policy Manual. Subsequent clarification of the policy by the IOE, however, indicates that it was intended as a general statement of desirable grooming of school personnel rather than a specific prohibition of beards and mustaches on school bus drivers.[2]
 
 
 4
 Pence sued Assistant Superintendent Rosenquist, Superintendent Kruzich and all members of the School Board individually for damages in federal court alleging violation of his civil rights under color of state law and of the equal protection guarantee of the Fourteenth Amendment.
 
 
 5
 The defendants moved to dismiss the complaint on several grounds. First, that the Board in its capacity as a municipal corporation is not subject to liability under the Civil Rights Act, 42 U.S.C. § 1983. The district court agreed and granted a motion to dismiss that aspect of the complaint. Second, that a suit against the School Board as a separate entity could not be maintained under the Fourteenth Amendment because the jurisdictional amount required by 28 U.S.C. § 1331 was lacking. The district court agreed that Pence failed to meet the $10,000 prerequisite and therefore the court lacked federal question jurisdiction. Thus, that part of the complaint was dismissed. Third, that the School Board members were protected by qualified immunity from liability based on the common-law tradition and strong public policy. The district court concluded, however, that the cause of action against the individual School Board members was maintainable under 42 U.S.C. § 1983 and the Supreme Court holding in Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Thus, defendants' motion to dismiss the complaint as to the individual defendants was denied.
 
 
 6
 Following the district court's ruling on the motion to dismiss, the parties filed cross-motions for summary judgment. The parties agreed that Pence was hired as a bus driver for the 1975-1976 academic year by formal School Board action, but were in disagreement whether Pence was under "contract" for his services. The district court, however, made a finding based on the respective affidavits that Pence's position was one at will. Summary judgment was granted for the individual defendants. The district court, relying on Milller v. School District No. 167, 495 F.2d 658 (7th Cir. 1974), concluded that even if Pence has an interest in his appearance which amounts to an interest in "liberty," the interest is of such minor nature that federal court intervention is unwarranted.
 
 
 7
 Two issues are raised on appeal: (1) the extent of school officials' liability under 42 U.S.C. § 1983; and (2) the nature of the constitutional violation. Each issue will be discussed in turn.
 
 
 8
 II. LIABILITY OF SCHOOL OFFICIALS UNDER 42 U.S.C. § 1983
 
 
 9
 Appellant Pence alleges that the suspension generated liability under the Civil Rights Act, 42 U.S.C. § 1983,[3] because Appellees School Board members, acting as public officials arbitrarily interfered with his right to free speech and equal protection of the laws as guaranteed by the First and Fourteenth Amendments.
 
 
 10
 Plaintiff sought damages and restitution until offered reemployment. Defendants claim immunity from liability for damages. Plaintiff points out that under Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975),
 
 
 11
 . . . a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.
 
 
 12
 420 U.S. at 322, 95 S.Ct. at 1001.
 
 
 13
 Plaintiff's complaint does not expressly allege the malicious intention required by Wood. It does, however, allege that the actions of the two school administrator defendants were "completely arbitrary and without any relationship to legitimate school policy and merely the bad faith exercise of personal prejudices." It also alleges that the Board members have been requested to disavow those actions but have failed to do so.
 
 
 14
 In this state of the record, it cannot be said as a matter of law that defendants were immune from liability for damages. Even a determination of immunity would not dispose of the case for all purposes. The question of damages aside, plaintiff may be entitled to declaratory and injunctive relief if he prevails on the merits.
 
 
 15
 Although the Wood holding is limited to the specific context of school discipline, this court has read Wood as equally applicable to officials whose actions affect the constitutional rights of teachers and other school personnel. Hostrop v. Bd. of Junior College District No. 515, 523 F.2d 569 (7th Cir. 1975).[4] We see no reason why the Wood standard of liability should not cover action taken against part-time school district employees such as bus drivers.
 
 III. THE MERITS
 
 16
 We have no difficulty in deciding, on the basis of the present record, that defendants' policy of not permitting a person with a mustache, no matter how neatly trimmed, to drive a school bus lacks any rational relationship with a proper school purpose. It is so irrational as to be arbitrary. Its irrationality is emphasized by the fact that defendants have no such policy with respect to teachers. The only justification even attempted is set forth in an affidavit that the policy is of long standing and acceptable to a community that is "religious, and . . . conservative in their attitudes toward tradition, heritage, morals, ethics, and their attitude toward work."
 
 
 17
 There is not even a suggestion that plaintiff's mustache negatively affected his driving skills, or relationship with his passengers, nor that it tended to generate any kind of problem which endangered their health or safety. Far from justifying the policy, the fact that the community attitudes were the only justification offered makes it even more clear, so far as the present record goes, that the presumption in favor of the validity of a rule has been overcome.
 
 
 18
 In terms of substantive due process, i. e., whether existence of such a policy deprives present or prospective bus drivers of liberty without due process,[5] the test is whether the challenger can demonstrate that there is no rational connection between the policy and accomplishment of a public purpose. Kelley v. Johnson, 425 U.S. 238, 247, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). Put another way, it is whether the choice of policy is so irrational that it may be branded arbitrary and therefore a deprivation of the challenger's liberty interest in freedom to choose his own hairstyle. 425 U.S. at 248, 96 S.Ct. 1440. Viewing the claim as a denial of equal protection, i. e., classification of persons with mustaches as ineligible for employment, the test is the same.[6]
 
 
 19
 Our difficulty with this case arises out of the holding, relied on by the district court, Miller v. School District Number 167, Cook County, Ill., 495 F.2d 658, 668 (7th Cir. 1974), that the liberty exercised in choice of style of appearance is of such minor significance that "the denial of public employment because the employer considers the applicant's appearance inappropriate for the position in question, does not in and of itself represent a deprivation that is forbidden by the Due Process Clause."
 
 
 20
 With all respect, this seems to us to be too sweeping a declaration. The Supreme Court did not go so far in deciding Kelley. There the Court assumed, but found it unnecessary to decide, that "the citizenry at large has some sort of 'liberty' interest within the Fourteenth Amendment in matters of personal appearance."[7] Whatever the liberty interest of the citizenry at large, the Court deemed "highly significant" the fact that plaintiff in a case of this sort makes his challenge as a government employee and not as a member of the citizenry at large. Listing a number of presumably acceptable restrictions to which the employee is subject, the opinion suggests that the governmental interest in accomplishing its proper purposes often outweighs the employee's interest in freedom of action. In the case of the policeman before it, the Court took into consideration the choice of organization of the police force, made by the governmental employer in furtherance of its purpose, and decided that plaintiff had clearly failed to "demonstrate that there is no rational connection between the regulation, based as it is on the county's method of organizing its police force, and the promotion of safety of persons and property."
 
 
 21
 After noting that it is not appropriate for courts to weigh the policy arguments for and against regulating hairstyles as an incident of a uniformed civilian service, the Court observed:
 
 
 22
 The constitutional issue to be decided by these courts is whether petitioner's determination that such regulations should be enacted is so irrational that it may be branded 'arbitrary', and therefore a deprivation of respondent's 'liberty' interest in freedom to choose his own hairstyle.
 
 
 23
 425 U.S. at 248, 96 S.Ct. at 1446.
 
 
 24
 The Miller approach is to hold categorically that a government employee's interest in choosing a style of appearance is not significant enough to raise a constitutional issue when he is discharged or excluded from government employment because the employer requires a different style. The Supreme Court's approach in Kelley does not support Miller. Indeed, but for the language about assuming a liberty interest, Kelley conflicts with Miller. At least the Supreme Court preferred to analyze the relationship of the rule to a governmental purpose than to adopt a principle categorically excluding the government employee's liberty interest in choice of personal appearance from constitutional protection.
 
 
 25
 We have no difficulty in concluding, as we have in school student cases (see footnote 7), that choice of appearance is an element of liberty. It seems a sounder approach to analyze the problem in terms of the rational relationship between the rule and a public purpose, as in Kelley, than to deny all consideration as in Miller. Application of the Kelley test should produce no judicial interference with the proper scope of administrative or legislative discretion, and will permit judicial action in a case of truly arbitrary infringement of personal freedom.
 
 
 26
 We therefore adopt the proposition only assumed in Kelley, and withdraw the categorical holding of Miller.[8]
 
 
 27
 The record before us includes the complaint and showings made by the parties on the motions for summary judgment. We have difficulty imagining any further showing by defendants which would identify a public purpose served by the policy challenged here. Because of the posture of this case, however, defendants are not foreclosed from an opportunity to plead and prove justification if they can.
 
 
 28
 The judgment appealed from is reversed and remanded for further proceedings.
 
 
 29
 PELL, Circuit Judge, concurring in part, dissenting in part.
 
 
 30
 In this case, the same public employer terminated employment of the plaintiff as a school bus driver because of his wearing a moustache but took no similar action concerning his employment as a school teacher. In the posture of the case as presented to us by way of summary judgment, the respective actions are so obviously inconsonant that they "may be branded 'arbitrary,' and therefore a deprivation of (the appellant's) 'liberty' interest in freedom to choose his own (manner of appearance.)" Kelley v. Johnson, 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1976). I therefore concur in the result reached in the majority opinion.
 
 
 31
 I do not, however, deem it necessary to retreat from what I regard as the salutary guidelines laid down in Miller v. School District No. 167, 495 F.2d 658 (7th Cir. 1974), and I therefore respectfully dissent from that portion of the majority opinion.
 
 
 32
 The line of distinction between the two cases is certainly a fine one but nevertheless one which has discernible status. As I read Miller, its actual holding is that in cases of the present type, involving a claim by a public employee of denial of an interest in the liberty of personal appearance, the federal courts should not embark upon the task of balancing rationality against irrationality. In the present case, the action of the school authorities, as the facts must be taken by us, do not require any such balancing; the denial of employment as a school bus driver cannot be characterized other than as arbitrary and capricious. This, to paraphrase the language of Miller, was a restriction so extreme that it would be readily condemned as an unconstitutional deprivation. Id. at 664.
 
 
 33
 The unusual facts of the present case of antagonistic right and left hands should not be, in my opinion, the basis for weakening the controlling principles laid down in Miller.
 
 
 
 [1]
 The original appeal was dismissed because there was no judgment set forth as a separate document. See Rappaport v. United States, 557 F.2d 605 (7th Cir. 1977)
 
 
 [2]
 (T)his office has never taken any position or given any advice to the effect that an individual who wears a moustache or beard is ineligible to drive a school bus under these regulations. Indeed, we find no relationship whatever between the wearing of a beard or moustache and the ability to drive a school bus
 Letter from Illinois Office of Education to Matthew J. Reicich, Superintendent of the Will County Educational Service Region.
 
 
 [3]
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [4]
 Although that case (Wood v. Strickland) dealt with board members' individual responsibility for disciplinary proceedings against students, its discussion of immunity is equally applicable to conduct of board members affecting the rights of teachers and administrators
 523 F.2d at 577.
 
 
 [5]
 The question has usually been considered in terms of due process. Kelley, supra, Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969); Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Holsapple v. Woods, 500 F.2d 49 (7th Cir. 1974); Miller v. School District Number 167, Cook County, Ill., 495 F.2d 658 (7th Cir. 1974)
 
 
 [6]
 See San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 55, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)
 
 
 [7]
 Mr. Justice Powell stated in concurrence that
 "I find no negative implication in the opinion with respect to a liberty interest within the Fourteenth Amendment as to matters of personal appearance."
 425 U.S. at 249, 96 S.Ct. at 1447. Cases in this circuit have uniformly held that in a public school the student's right to control personal appearance is an ingredient of personal freedom protected by the Fourteenth Amendment. Holsapple v. Woods, 500 F.2d 49 (7th Cir. 1974); Arnold v. Carpenter, 459 F.2d 939 (7th Cir. 1970); Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969).
 
 
 [8]
 This opinion has been circulated among all the judges of this court in regular active service. A majority did not favor a rehearing in banc on the question of withdrawing the categorical holding of Miller